RECEIVED

DEC - 3 2013

PRO SE OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

RIVKA STEIN,

                              **Plaintiff,**

      -against-

WORLD WIDE PLUMBING SUPPLY INCORPORATED,
MOSHE WEISS a/k/a MOSES WEISS a/k/a MOSHE
WEISZ, YOEL WEISS a/k/a JOEL WEISS a/k/a DAVID
WEISS a/k/a DAVID STERN a/k/a JOE WEISS, PEARL
WEISS, CHAIM LEFKOWITZ, SURI LEFKOWITZ a/k/a
SARAH WEISS LEFKOWITZ, GEDALIA DANIEL
KATZ a/k/a DANIEL KATZ, BARUCH WEISS, SIRKI
EHRMAN a/k/a SIRKY EHRMAN a/k/a SIRKA WEISS
EHRMAN, RUCHIE WEISS a/k/a RACHEL GOLDA
WEISS, ABRAHAM BERGER a/k/a ABE BERGER,
BURTOLUCCI'S CATERING CORP., and JOHN DOE #1
through #30, Wiztel USA inc.

                                **Defendants,**

------------------------------------------------------------------x

Civil Action No. CV

CV 13 - 6795

COCAN, J.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, RIVKA STEIN, appearing pro se, as and for her complaint against the
defendants, respectfully alleges as follows:

**JURISDICTION**

1.    This is a complex civil action seeking declaratory and injunctive relief, as

well as actual, consequential and exemplary damages, of which jurisdiction is conferred

upon the United States District Court, Eastern District of New York by the federal RICO

statutes at 18 U.S.C. §1962; and by Plaintiff's legal entitlement of civil remedies pursuant

to18 U.S.C. §1595 as a result of defendants' herein having acted against Plaintiff both

jointly and severally with calculated intent in their commission of the following crimes indictable under federal statute:

    (i)    Peonage - 18 U.S.C. §1581, and where the violations of this section include kidnapping and aggravated sexual abuse; and

    (ii)    Forced Labor - 18 U.S.C. §1589(a)(1)(2)(3)(4)(b)(d), and where the violations of this section include kidnapping and aggravated sexual abuse; and

    (iii)    Trafficking With Respect To Peonage - 18 U.S.C. §1590(a), and where the violations of this section include kidnapping and aggravated sexual abuse;

and for supplementary state claims for repeated rape per se, *prima facia* tort, among other claims.

## THE PARTIES

2.    The Plaintiff RIVKA STEIN a/k/a RIVKY STEIN ("Plaintiff"), is above the age of eighteen years, and is domiciled at 1689 48th Street, Brooklyn NY 11219.

3.    The Defendant WORLD WIDE PLUMBING SUPPLY, INCORPORATED ("World Wide Plumbing") upon information and belief is not a domestic corporation on file or registered with the State of New York; though it conducts business in the State of

New York and out of state, while maintaining its business address and office at 4002 - 15th Avenue, Brooklyn, New York 11218.

4.   The Defendant CHAIM LEFKOWITZ is a person over the age of 18 years, and resides at 1745 - 56th Street, Brooklyn, New York 11219.

5.   The Defendant SURI LEFKOWITZ a/k/a SARAH WEISS LEFKOWITZ is a person over the age of 18 years, and resides at 1745 - 56th Street, Brooklyn, New York 11219.

6.   The Defendant MOSHE WEISS is a person over the age of 18 years, and resides at 1234 - 47th Street, Brooklyn, New York 11219.

7.   The Defendant PEARL WEISS a/k/a PEARL ETYA WEISS is a person over the age of 18 years, and resides at 1234 - 47th Street, Brooklyn, New York 11219.

8.   The Defendant RUCHIE WEISS a/k/a RACHEL GOLDA WEISS is a person over the age of 18 years, and resides at 1234 - 47th Street, Brooklyn, New York 11219.

9. The Defendant YOEL WEISS a/k/a JOEL WEISS a/k/a DAVID WEISS a/k/a DAVID STERN is alleged to be a person over the age of 18 years, and is alleged to reside at 1234 - 47th Street, Brooklyn, New York 11219.

10. The Defendant GEDALIA DANIEL KATZ a/k/a DANIEL KATZ (hereinafter "GEDALIA KATZ") is a person over the age of 18 years, and upon information and belief he resides at 1149 East 15th Street, Brooklyn, New York 11230.

11. The Defendant ABE BERGER a/k/a ABRAHAM BERGER is over the age of 18 years, and upon information and belief resides in Brooklyn, New York. At 1234 47th Brookly NY 11219

12. The Defendant SIRKY EHRMAN a/k/a SIRKI EHRMAN a/k/a SIRKA WEISS EHRMAN is a person over the age of 18 years, and upon information and belief she resides at 6132 N Drake Ave, Chicago, IL 60659-2218.

13. The Defendant BARUCH WEISS is over the age of 18 years, and upon information and belief, a United States Citizen residing in Canada and maintains an address at 3705 Bathurst Street, North York, Ontario M6A2E8.

14. The Defendant BURTOLUCCI'S CATERING CORP. is registered as a New York State corporation, with process of service designated at 1621 East 27th Street, Brooklyn, New York. 11230

15.  The Defendant WIZTEL USA Inc. is currently registered as an inactive New York State corporation, with process of service designated at 4711 – 11th Avenue, Brooklyn, New York. 11219

16.  The Defendants JOHN DOE #1 through #30 are fictitious names representing persons of both gender, above the age of 18 years, whose real names are currently unknown to Plaintiff, and who are believed to have aided and abetted the herein defendants in the allegations herein described.

## VIOLATIONS OF THE R.I.C.O. ACT
## 18 UNITED STATES CODE §1962

17.  The **Defendant** World Wide Plumbing, also referred to herein as the "RICO Enterprise", as the term is referred to in the RICO statute, is controlled and operated by **Defendant** CHAIM LEFKOWITZ generally as a plumbing supply operation, with **Defendant** WORLD WIDE PLUMBING, additionally acting separate and apart from the said general operation, while promoting the use of racketeering acts as defined in 18 United States Code §1961, resulting in a pattern of racketeering activity and falling within the parameters of the prohibited activities proscribed by 18 United States Code §1962, with **Defendant** CHAIM LEFKOWITZ, acting in concert and conspiracy with and on behalf of certain other herein defendants, both jointly and severally, to wit,

**Defendant** YOEL WEISS, **Defendant** SURI LEFKOWITZ, **Defendant** MOSHE

WEISS, **Defendant** PEARL WEISS, **Defendant** GEDALIA KATZ, **Defendant** SIRKY

EHRMAN, **Defendant** BAURCH WEISS, and **Defendant** RUCHIE WEISS, and

**Defendant** ABE BERGER, and where the said defendants as a result of the

aforementioned racketeering crimes have directly enriched the RICO ENTERPRISE

**Defendant** World Wide Plumbing, a company involved in interstate commerce, and have

maintained and promoted the illegal operation of same, and where as a direct result of the

illegal enrichment of the said RICO ENTERPRISE and the promoting and maintaining of

its illegal operation the Plaintiff RIVKY STEIN was repeatedly injured and damaged, as

set forth hereinbelow, including loss of her business, and related revenues thereof,

through the commission of multiple crimes by the aforementioned defendants, acting in

concert and conspiracy, certain of which fall under the parameters of RICO predicate

crimes, including but not limited to money laundering, extortion, dealing in wholesale

merchandise hijacked from interstate carriers, dealing in wholesale repackaging and date

relabeling of expired medications, fraud on a United States Court, peonage together with

kidnapping and multiple rapes, involuntary servitude together with kidnapping and

multiple rapes, abduction across the border to Canada together with repeated rapes, and

where the aforesaid repeated rapes were with threats of kidnapping Plaintiff's children,

and/or with threats of assault and battery, and/or with actual physical assault and battery,

and other type threats –all of which are clearly described hereinbelow.

18.   In furtherance of the aforementioned RICO crimes, each of the following, **Defendant** CHAIM LEFKOWITZ, **Defendant** YOEL WEISS, **Defendant** SURI LEFKOWITZ, **Defendant** MOSHE WEISS, **Defendant** PEARL WEISS, **Defendant** GEDALIA KATZ, **Defendant** SIRKY EHRMAN, **Defendant** BAURCH WEISS, and **Defendant** RUCHIE WEISS, and **Defendant** ABE BERGER, while acting both jointly and severally, did knowingly conspire and willfully join together to act as a group while fully cognizant that the criminal activities they would perpetrate, to wit, including but not limited to  money laundering, extortion, dealing in wholesale merchandise hijacked from interstate carriers, dealing in wholesale repackaging and date relabeling of expired medications, fraud on a United States Court, peonage together with kidnapping and multiple rapes, involuntary servitude together with kidnapping and multiple rapes, abduction across the border to Canada together with repeated rapes, and where the aforesaid repeated rapes were with threats of kidnapping Plaintiff's children, and/or with threats of assault and battery, and/or with actual physical assault and battery, and other type threats –all of which are clearly described hereinbelow, among possible others crimes, all of which fall under the RICO predicate acts defined under 18 United States Code §1961, and would form a pattern of racketeering activity, with the objective and determination to violate the federal racketeering crimes described under 18 United States Code §1962(a), and where as a direct result of the said RICO crimes perpetrated in concert and conspiracy by the **Defendant** CHAIM LEFKOWITZ, **Defendant** YOEL WEISS, **Defendant** SURI LEFKOWITZ, **Defendant** MOSHE WEISS, **Defendant** PEARL WEISS, **Defendant** GEDALIA KATZ, **Defendant** SIRKY EHRMAN, **Defendant**

BAURCH WEISS, and **Defendant** RUCHIE WEISS, and **Defendant** ABE BERGER,

via RICO ENTERPRISE **Defendant** WORLD WIDE PLUMBING, did cause the business

owned by Plaintiff, including revenue derived thereof, to be damaged and stolen.


19.  The allegations hereinbelow describe the defendants directly participating

together in an organized ongoing scheme to continuously hide, invest and launder

millions of dollars and where as a direct result of the crime family's order of operations,

Plaintiff was among other things, abducted, imprisoned, and placed in forced servitude

where she was repeatedly starved, beaten and raped.  Additionally, in 2011 Plaintiff was

kidnapped while on New York State soil and brought to Ontario, Canada where she was

forcefully imprisoned, repeatedly beaten and raped.


20.  For all purposes within the instant Complaint, unless specifically stated

otherwise, each of the stated crimes perpetrated against Plaintiff by Defendants Yoel

Weiss, Baruch Weiss, Moshe Weiss, Sirky Weiss, Chaim Lefkowitz, Pearl Weiss, Suri

Weiss, and Ruchi Weiss, should for all purposes be construed herein as having been

committed while acting jointly, severally, and in concert and conspiracy with Defendants

Yoel Weiss, Baruch Weiss, Moshe Weiss, Sirky Weiss, Chaim Lefkowitz, Pearl Weiss,

Suri Weiss, Gedalia Katz, Abe Berger, and Ruchi Weiss ("Crime Family Defendants");

as well as the aforesaid defendants having perpetrated the stated crimes in concert and

conspiracy, willfully with intent to damage Plaintiff.

21.  Plaintiff will provide absolutely no mercy to the barbaric rapist and kidnappers, as well as to the other cruel sadistic defendants herein that acted in concert and conspiracy in the commission of the aforementioned horrific crimes, and will fully cooperate with the federal, state and Canadian authorities to seek full justice, prosecution and the maximum prison terms, for the participants of the horrific crimes, and those defendants that acted together in concert and conspiracy.

22.  Moreover, pursuant to 18 U.S.C. §1594, Plaintiff will seek confiscation by the United States government of the real property located at 1234 - 47th Street, in the Borough Park section of Brooklyn, New York, currently occupied by Defendants Moshe Weiss, Pearl Weiss, Ruchie Weiss, and Yoel Weiss, which real property was used to facilitate Plaintiff's kidnapping, peonage, forced servitude, torture, repeated beatings and rapes.

23.  The herein defendants operate via a network of predominantly blood related crime family members together with non-blood related crime family members, not all of whom are defendants to this action. That in addition to their own crime family network they work and interact with organized crime in the operation of an illegal cargo business and money laundering operation on behalf of the said RICO enterprise, through a long sophisticated chain of repeated RICO violations, many of which were also directed against Plaintiff personally, and against her two infant children, and cited as part of the

instant action because they form and support a pattern of defendants' RICO predicate crimes.

## INTRODUCTION
### & RELEVANT BACKGROUND

24.   The Plaintiff Rivka Stein was at the age of 18 a naïve and vulnerable child of a broken home, having spent many years of her youth in an orphanage and under the care of foster parents.

25.   In July 2008, when Plaintiff Rivka Stein was of the age 18, and Defendant Yoel Weiss was of the age 25 the two were religiously married, but <u>never</u> civilly married. Plaintiff agreed to the religious marriage after Defendant Yoel Weiss deceivingly represented and promised that he would within two weeks thereafter proceed with her to the Kings County Marriage Bureau to marry civilly.

26.   Defendant Yoel Weiss never had any intention from the get go of creating a legally binding civil marriage with Plaintiff.   According to Defendant Yoel Weiss, civil marriage carries the risk of divorce litigation and discovery, something too risky for the family business.   It was enough for Defendant Yoel Weiss that Plaintiff was young, naïve and vulnerable, from a poor background.   Defendant Yoel Weiss and certain members of the

crime family, conveniently believed that Plaintiff would appreciate his lavish spending <u>on</u> <u>himself</u> and his fancy car collection, and would surely unremittingly stick by him, fall willingly under his servitude; and have babies for him, while ignoring his illegal activities and keeping all said activities seen and heard totally to herself.

27.   In different words, Defendant Yoel Weiss, as well as certain members of the crime family mistakenly perceived Plaintiff as a submissive "dumb blonde" that could easily be locked into a ecclesiastical relationship while being cheated out of a civil marriage, and where they could thereafter demoralize her and physically lock same in different houses as a prisoner against her will, deprive her of food and drink as a form of punishment, deprive her of medical treatment and medications, disarm her of her basic civil and human rights, force her to work for the benefit of the crime family without pay, forever abuse her, repeatedly rape her, and torment her as they wish, without the crime family suffering any consequences.

28.   Additionally, Defendant Yoel Weiss, acting jointly, severally, willfully with intent to damage, and in concert and conspiracy with other defendants, confiscated all of Plaintiff's bank accounts and monetary gifts from 2008 and prior, believed to have totaled in excess of sixty thousand dollars.

29.   Beginning from the onset in July 2008, and continuing for the next four years, Plaintiff repeatedly cried bitter tears begging that she made a mistake and wanted out of the painful and torturous relationship with Defendant Yoel Weiss.  Plaintiff repeatedly insisted

to Defendant Yoel Weiss that he should find someone else; that she abhorred him; that she despised him; that she wanted to return to her foster care parents. However, the more that Plaintiff insisted that she wanted to leave Defendant Yoel Weiss, the more that he and his crime family took various actions, including but not limited to threats to the safety and well being of Plaintiff, in order to prevent Plaintiff from physically escaping his claws and the claws of the rest of his deranged crime family. For the four years that followed, Plaintiff was literally turned into a slave and was totally demoralized by Defendant Yoel Weiss and defendant members of the crime family.

30.  Plaintiff during her four years of captivity had two children from Defendant Yoel Weiss. The first child, a boy, was born on June 6, 2009. The second child, a girl, was born on October 27, 2010.

31.  During her four horrific years in captivity, Plaintiff was repeatedly reminded by Defendant Yoel Weiss, Defendant Moshe Weiss, Defendant Pearl Weiss, and Defendant Suri Lefkowitz, that within this [crime] family, a member's cooperation and secrecy is a cardinal obligation and requirement in order to survive as a healthy person. Defendant Suri Lefkowitz and Defendant Yoel Weiss were more direct to the point using the words, cooperation and secrecy is required around here if you want to remain alive and not be killed.

32.  As set forth in detail further hereinbelow, the crime family defendants, acting in concert and conspiracy predominantly through Defendant Yoel Weiss, initiated

a campaign to wholly subvert, subjugate and emotionally demoralize the Plaintiff, by means of kidnapping, peonage, forced servitude, food and sleep deprivation, repeated rapes, verbal and emotional abuse, physical beatings, child abuse, abduction across the Canadian border, extortion, and other related acts, with the intentional aim and objective to dispirit and fully control the mind set of Plaintiff.

33. As a direct result of the aforesaid, Plaintiff was afflicted with great painful emotional distress, anxiety and apprehension from divulging any confidential matters relating to the ongoing criminal activities within the crime family, including her forced servitude, repeated rapes, and other torment.

34. Included though not limited to the laundry list of physical and emotional abuse and torture directed toward Plaintiff during those four horrifying years, is the hellish ordeal that transpired in November 2010, just a few days after the birth of her second child. Defendant Yoel Weiss had brought Plaintiff, the newborn infant, and her toddler son to the home of his parents, Defendants Moshe and Pearl Weiss, purportedly for post maternity assistance, something that just absolutely did not happen. Defendant Yoel Weiss left to work each day leaving Plaintiff and the two infants alone with his parents.

35. After a few days in the Weiss home, Plaintiff was in great pain and felt extremely weak, and realizing she could not safely take care of herself, her toddler and

nursing newborn, demanded to be permitted to go to a convalescent home in Seagate, Brooklyn with only the newborn. Defendant Yoel Weiss was advised by phone of the Plaintiff's demand and adamantly refused, while threatening Plaintiff that if she left without his permission he would remove the toddler from her and take him to Canada and she would never see him again. Plaintiff advised Defendants Moshe and Pearl Weiss she was too weak and in too much pain to remain and was going anyway. Defendant Pearl Weiss began to shout and threaten Plaintiff that she should not disobey her son or she would be very sorry. Defendant Moshe Weiss echoed the debased threats of his son, and furthermore grabbed away Plaintiff's older child, to prevent Plaintiff from kissing him goodbye in an attempt to prevent Plaintiff from leaving. Plaintiff felt she could not anyway physically survive if she remained, and left in tears with only the newborn infant, whom she was nursing.

36. Defendant Yoel Weiss upon hearing that Plaintiff left, began a harassment campaign of repeated threatening phone calls to the convalescent home directed toward Plaintiff.

37. On the following Saturday afternoon while at the convalescent home in Seagate, Plaintiff collapsed in pain and was rushed by ambulance to the emergency room at Miamonides Medical Center in Borough Park, Brooklyn, and diagnosed with a life threatening urinary track infection, and was prescribed medication. Defendant Yoel Weiss was advised through the convalescent home of Plaintiff's entry to the emergency

room, and arrived at the hospital to demand that she be discharged. Upon discharge from the hospital, the Plaintiff, while still very weak and in great pain, was forced by Defendant Yoel Weiss to pick up the infant that had been left in Seagate at the convalescent home and to return physically and emotionally to his clutches. Defendant Yoel Weiss brought Plaintiff and her two infants home to their residence, then located in the Flatbush section of Brooklyn. As a punishment for having been disobedient Plaintiff was prevented by Defendant Yoel Weiss from filling the prescription that she received at the hospital, and from leaving the residence to see another doctor.

38. On the day following, Plaintiff was in excruciating pain, believing she was going to die. She was subsequently taken by ambulance back to the Emergency room at Miamonides Hospital. Defendant Yoel Weiss remained at the Flatbush residence with the two children; one of who was nursing and hungry. Defendant Yoel Weiss called Plaintiff prior to her being seen by a doctor and demanded that he needed her to watch his Latino workers packing cargo at their residence, and that if she didn't leave immediately the hospital and come home he was going to take away the children to Canada. Plaintiff was forced to adhere, and left the hospital without being seen by any doctor.

39. On the following day, Plaintiff, still weak and in terrible pain, waited for Defendant Yoel Weiss to be out of site, at which time she dressed the two infants and left the residence with them. Plaintiff had no money for transportation, and walked to the office of a neighborhood doctor. Plaintiff was diagnosed with kidney stones.

40.  On the morning of July 2, 2012, after four years of horrific torture, continuous threats of being committed to an insane asylum, forced servitude, being repeatedly raped, imprisonment and starvation  -enduring ill treatment along the lines associated with Ariel Castro, the infamous Cleveland kidnapper-  a malnourished and despondent Plaintiff Rivka Stein with her two underfed infants finally found the physical and emotional courage to escape the horrors of Defendant Yoel Weiss and the crime family forever.

41.  The aforementioned threat, that Plaintiff's children would be removed from her and taken to Canada and that she would never see him again, was repeated to Plaintiff from 2009 through and including 2012, not hundreds of times but literally thousands of times by Defendant Yoel Weiss, his parents Defendants Moshe and Pearl Weiss, Defendant Ruchie Weiss, and Defendant Suri Lefkowitz, using various facial gestures and different word forms, all with the aim to instill fear and anxiety in Plaintiff and to control her body and mind.

42.  Notwithstanding Plaintiff having procured an order of protection against Defendant Yoel Weiss on the afternoon of July 2, 2012 at the Kings County Family Court, he has repeatedly violated that order, thereby causing his arrest on <u>four</u> separate occasions.

43.  Described hereinbelow in further detail, are additional crimes of kidnapping together with repeated rapes, and forced servitude, in which Defendant Moshe Weiss

participated together with his wife Defendant Pearl Weiss, his daughter Defendant

Ruchie Weiss, and his sister Defendant Suri Lefkowitz.


44. Plaintiff believes with confidence that when Defendant Pearl Weiss is faced

with indictments and prison time for herself, and husband Defendant Moshe Weiss, her

sister-in-law Defendant Suri Lefkowitz, brother-in-law Defendant Chaim Lefkowitz, her

son Defendant Weiss, and her daughters Defendants Ruchie Weiss and Sirky Ehrman,

she will offer to sing a sweet rendition for the government containing a disclosure of all

the crime family assets, as well as the crime family secrets behind the RICO enterprise, in

exchange for more lenient prison sentences.


## PLAINTIFF'S OFFICIAL PLACE OF RESIDENCE

45. Beginning July 2008, Plaintiff officially resided with Defendant Yoel Weiss at

1621 East 27th Street, Brooklyn, New York. That residence was an entire house consisting

of three floors, a basement and a garage located in the rear, all of which was leased to

Defendant Yoel Weiss. During about March 2011, Defendant Yoel Weiss gave up his lease

to that residence. From November 2011 until July 2, 2012, the official residence was

relocated at 1435 –46th Street, Brooklyn, New York. The whereabouts of Plaintiff and her

two children, and the hellish ordeals subjected to between January 2011 and November 2011

are explained further hereinbelow.   (For the purpose of clarity, the term "residence" in the

instant complaint refers to one of the two aforesaid respective residences, depending on the frame of time inferred.)

## MIND CONTROL BY DEFENDANTS

46. The actual first part of the campaign to take control of Plaintiff, both physically and emotionally, including manipulating her into long-term involuntary servitude, began the day immediately following the July 2008 religious ceremony. First, Defendant Yoel Weiss represented that he was the trusted manager of the family owned business. He then continued with an entirely fictional story how as of lately the family business had become extremely competitive, with many of the competition continuously endeavoring to discover the family's sources and accounts, and that not so long ago one of his competitors had followed certain family members and other employees of the business, and were additionally hacking their phones and computers, after which time those family members and employees were extorted and forced to reveal sensitive business information. He then continued that it was his utmost concern, and the concern of his family partners, that Plaintiff should never become a target of the competition.

47. Accordingly, soon thereafter, premised on the aforesaid fabricated story about the competition and their great concern for the personal safety of the Plaintiff, Defendant Yoel Weiss together with Defendants Chaim Lefkowitz, Suri Lefkowitz, Moshe Weiss,

Ruchie Weiss, Baruch Weiss, Sirky Ehrman, Pearl Weiss, acting in harmonious concert and conspiracy, kidnapped Plaintiff and placed under a continuous state of imprisonment and surveillance, preventing her from communicating with police or persons she knows, while declaring for themselves open season against her, which included but was not limited to, certain of the defendants herein committing against Plaintiff, unrestrained harassment, extortion, repeated rapes, threats of beatings and torture, beatings, torture, forced servitude, peonage, abduction to Ontario, Canada followed by being imprisoned and repeatedly raped in Ontario, Canada, grand larceny and criminal abuse of children,  in order to preclude Plaintiff from ever divulging to anyone matters relating to the crime family business; and to draft her into involuntary servitude for the advancement of the crime family's businesses; and to simultaneously satisfy the defendants' debased lust for control over the body and mind of an innocent girl.

48.  Moreover, in furtherance of the aforesaid scheme, and with the intent to deceive, confuse and further break down Plaintiff emotionally, during the four years of Plaintiff's captivity, the Defendants Yoel Weiss, Moshe Weiss, Pearl Weiss and Suri Lefkowitz, repeatedly stated, in the absence of any psychiatric or other professional finding whatsoever, that they have knowledge that Plaintiff is suffering from severe bipolar disorder, and repeatedly extorted Plaintiff with threats that they can anytime at their discretion have her hospitalized and medicated in a psychiatric ward.

49. It is noted here that the daughter of Defendants Moshe and Pearl Weiss, a girl named Faigy Weiss, who always appeared as being a normal, talkative, and non-problematic personality, had upon information and belief, during about 2010, when she was about the age of 22 published on her facebook page that her brother Defendant Yoel Weiss had forcefully been incestuous with her. She additionally described some of the crime related business associated with her family. As soon as Defendants Moshe, Yoel and Pearl Weiss became aware of Faigy's publication she was forced to delete it, and she was immediately thereafter committed to a psychiatric ward and forced to take heavy mind controlling medications. Plaintiff met Faigy after she was released from the psychiatric ward and found that she shockingly possessed another personality, unwilling to discuss anything with her.

50. Plaintiff was seldom permitted to have access to a phone. During the certain times that it was permitted, Plaintiffs phone calls and/or text communications were tightly monitored and/or kept under strict surveillance.

51. In furtherance of the crime family defendants' aim to emotionally damage, demoralize and break down Plaintiff, the Plaintiff was continuously advised and reminded by Defendants Yoel Weiss, Moshe Weiss, Pearl Weiss and Suri Lefkowitz that the residence interior and exterior were wired with audio and video surveillance, controlled and recorded by Defendant Yoel Weiss.

52.  Beginning after that dreadful day in July 2008, Plaintiff was barred by Defendant Yoel Weiss for approximately five months from ever calling or having any communication whatsoever with the wonderful foster family that fully cared for Plaintiff from the time she was an adolescent entering high school until that day in July 2008. Likewise, Defendant Yoel Weiss prohibited Plaintiff from calling her brothers and any of her friends.

53.  Plaintiff was bodily threatened not to exit the premises of her residence without obtaining prior approval from Defendant Yoel Weiss or certain other defendants herein. On most occasions, it was necessary that one of the defendants herein physically escort her down the local street when she insisted that she had to shop.

54.  Defendant Yoel Weiss is a sex-addict always demanding sex.  Plaintiff since July 2008 pleaded and cried that she wanted nothing to do with Defendant Yoel Weiss; that he was abhorrent; that she wanted to be forever out of his life and out of the life of his crime family.  Plaintiff always reminded Defendant that they were not civilly married and that he had no legal right to touch her.  In response Plaintiff was physically beaten and then raped, followed by being locked in a room and deprived of meals.

55.  It was both common and typical that after Plaintiff was physically beaten and/or raped, or administered some other form of harsh treatment, that Defendant Yoel Weiss would harshly rebuke her claiming repeatedly that she was acting "abnormal"; that

she was completely at fault for what transpired to her, leaving Plaintiff confused and feeling the possibility that she was indeed guilty of something.

56.   During the four horrific years of Plaintiff's captivity, Defendant Yoel Weiss, in addition to his vulgarities, repeatedly referred to Plaintiff by the terms "abnormal", "not normal", "falling outside of normality" at least thousands of times during his blaming her following his routine beating and raping her.

57.   On one occasion during early 2009, Defendant Yoel Weiss discovered that Plaintiff, had without obtaining his prior permission left the residence in order to shop at a local grocery on Nostrand Avenue.  Plaintiff who was then pregnant, was directed immediately back to the residence, to be repeatedly slapped, viciously battered and raped by Defendant Yoel Weiss.

## IN FURTHERANCE OF PLAINTIF'S ABDUCTION

58.   On or about the Saturday morning of December 26, 2009, notwithstanding Plaintiff having been abducted, enslaved, raped, and continuously imprisoned by Defendant Yoel Weiss, Plaintiff told same of her intent to soon exit the residence premises with her then six-month-old infant in order to get air.   Defendant Yoel Weiss became infuriated and bodily-prevented Plaintiff from leaving the room to dress the infant in his snowsuit. He managed to grab away the infant from Plaintiff, who was holding the infant tight, by wildly pulling at his arms and at the same time pinching the

arms of the infant causing the infant and Plaintiff to scream hysterically.  Plaintiff in fear

of the infant's safety had to let go of the infant.

59.  Immediately following the aforesaid encounter, Plaintiff was forced to

remain all day until late at night in one particular room with the infant, and was bodily

guarded by Defendant Yoel Weiss to prevent her from exiting that room.  As a

punishment for being disobedient Plaintiff was provided no food and drink, despite her

being a nursing mother.

60.  Defendant Yoel Weiss additionally took physical possession of plaintiff's

winter coat and the infant's snowsuit, and all other outerwear to assure Plaintiff cannot

leave the residence.  Plaintiff was thereafter forced by threat of bodily harm to stay within

the residence, and where food was not provided adequately and told that no permission

will be given to leave even with an escort for the next three to four days.

## THE ILLEGAL CARGO BUSINESS

61.  From 2008 through January 2011 the residence was used illegally as a

twenty–four hour commercial warehouse for an illicit cargo business ("cargo business").

There are no words to describe the living hell that Plaintiff was forced to endure while

confined in the residence turned underworld warehouse, first alone and subsequently

together with her infants; always in great fear for her personal safety and that of her children;

being unable to leave without being first granted permission by Defendant Yoel Weiss; and believing that her every move was being observed and recorded on camera.

62.   Plaintiff was forcefully enslaved by Defendant Yoel Weiss, acting in concert and conspiracy with the crime family defendants, to act as a monitor over the workers employed at the residence/warehouse, and where her physical presence served to discourage them from breaking open locked areas in the residence, theft of the cargo, idleness and indolence.  There was almost always stashed away under lock and key within the residence, bags containing gold and diamond jewelry worth on the wholesale market in excess of two-hundred thousand dollars, as well as cash often hidden in corrugated boxes and locked in the basement area, which made Defendant Yoel Weiss very fearful and uncomfortable to ever leave his Latino workers alone in the residence. Accordingly, Plaintiff was required by Defendant Yoel Weiss, acting in concert and conspiracy with the crime family defendants, to remain all the time in the residence and provide the additional physical supervision and security that he needed over the Latino workers.

63.   There were daily truckloads of illegal merchandise being dropped off at the residence turned warehouse, after which time the packaging was changed and/or relabeled by illegal Latino immigrants that arrived day and night respectively for either the day shift or night shift.  The night shift usually never ended before 12:30 A.M.

64.   Certain pharmaceutical and food cargo were provided new packaging with the expiration dates changed.   Immediately thereafter, or the very next day or two, those same packages were usually removed and in their place arrived other similar shipments.

65.   The residence was overflowing with corrugated boxed loaded full with merchandise.  The kitchen, dining room, and bedrooms were all used for commercial storage.  There was literally no living space, and very little space to move around, and certainly no privacy whatsoever.  As a result of all the cargo boxes, merchandise and workers the residence was uninhabitable for any sane human being.  Plaintiff was confined day and night, in fear of escape, usually without a phone, to a small area in the residence surrounded by corrugated boxes, merchandise and Mexican and other Latino laborers.

66.  Defendant Yoel Weiss was dealing in wholesale merchandise believed stolen from hijacked commercial trailers by members of underworld crime organizations, including the Polish Mafia.  Included in the shipments were laptops, computer parts, air conditioners, surefire flashlights, designer handbags by Louis Vitton, Estee Lauder and others, name brand mattresses, soon to be expiring pharmaceuticals, expired pharmaceuticals, various selections of Hershey's chocolates, and other food products, as well as various assortments of expensive pearls, gold and diamond jewelry, and numerous other types of merchandise.

67.  Upon information and belief, the aforementioned jewelry was obtained usually from one underworld group that acquired same using stolen credit cards through organized purchases.

68.  Defendant Yoel Weiss worked closely with Defendant Abe Berger relating to the purchasing and selling of the aforesaid jewelry.

69.  The merchandise arrived at the residence via commercial trailers, vans, and/or Fed-Ex, UPS, or other similar company.  Shipping out was usually by the same manner.

70.  At least once during about 2009 Defendant Yoel Weiss received a violation from the City of New York after one of the neighbors complained to the city that the once quiet residential block had been turned into a commercial shipping yard.

71.  Defendants Chaim Lefkowitz and Suri Lefkowitz had keys to the residence and would arrive any time at all hours of the day or night, unconcerned for Plaintiff's basic privacy, without giving Plaintiff any notice and without knocking on the door or ringing the doorbell, in order to inspect the merchandise and spot check on Plaintiff, the Spanish workers, and on Defendant Yoel Weiss.

72.  Upon information and belief, Defendants Chaim Lefkowitz and Suri Lefkowitz the acting principle owners of the illegal cargo business, together with Defendant Yoel Weiss, were acting on behalf of a certain third party, to be eventually named.

73.  For some years prior to 2007 the cargo business was operated at a different location.  However, as a result of Plaintiff being forced to remain in servitude for the crime family, it was more conducive to continue operating the cargo business from the residence, where Plaintiff was the physical monitor, forced to oversee the cargo and workers, thereby discouraging theft, and making it more convenient for Defendant Yoel Weiss to keep a check on her.

74.  Defendant Yoel Weiss and/or Defendant Chaim Lefkowitz always paid the aforesaid Mexican and other Latino laborers weekly in cash.

75.  Plaintiff was daily forced to work a double shift equaling over sixteen hours per day from late July 2008 through early March 2009; and from November 2010 through the third week of December 2010; for over nine months in total.

76.  Plaintiff was in great fear of Defendant Yoel Weiss and believed she had no safe way to avoid working for him or escape his clutches.

77.  Plaintiff was never paid for any of her forced labor.

-27-

78.  As set forth further hereinbelow, Plaintiff's involuntary servitude was not limited to the cargo business, but continued at other subsequent jobs and locations.

79.  One particular Latino worker, his first name, Emanuel, was the acting foreman of the cargo business.  Emanuel recruited other Latino workers. He would often interchange his day and night shifts as was necessary.  He additionally worked sometimes to assist Defendant Chaim Lefkowitz at the Defendant World Wide when he was required there.

80.  On many occasions when there was not enough room for any more merchandise, Defendant Chaim Lefkowitz personally instructed Emanuel, Defendant Yoel Weiss or the driver to deliver the goods to one of his other company warehouses.

81.  There were various buyers arriving at the residence at all hours of the day and night to examine the merchandise.  Defendant Chaim Lefkowitz with/or without Defendant Suri Lefkowitz often arrived to meet those buyers to show the goods and negotiate prices.

82.      Upon information and belief, the buyers paid in all cash to Defendant Chaim Lefkowitz and/or Defendant Yoel Weiss.  There were certain other buyers that had arranged to deliver plumbing related material to Defendant World Plumbing in lieu of cash payment.

83.      There were always very large amounts of cash being transferred in corrugated boxes between Defendant Chaim Lefkowitz, Defendant Suri Lefkowitz and Defendant Yoel Weiss.   The said cash transfers occurred at the residence, or the home of Defendants Chaim and Suri Lefkowitz, or at the office of Defendant Chaim Lefkowitz located at the address of Defendant World Plumbing.

84.   During about September or October 2011 Defendant Yoel Weiss received from Defendant Chaim Lefkowitz numerous cash payments in corrugated boxes totaling upon information and belief in excess of $700,000.00.  The boxes of cash were thereafter brought to the home of Defendants Moshe and Pearl Weiss and recounted.

85.   Often there arrived subsequent to a delivery certain persons, always arriving in groups of two or three, clearly related to the previous source of the merchandise. When these persons arrived they would meet Defendant Yoel Weiss and/or Defendant Chaim Lefkowitz with/or without Defendant Suri Lefkowitz, and were seen or heard discussing the value and/or quality and/or identifying different markings on certain cargo and describing their contents.

86.  Upon information and belief, certain stolen merchandise shipments were made to appear as if purchased from overseas with offshore funds, via an overseas agent, and

where through the illegal cargo business those funds were converted back to cash on American soil as the all cash proceeds from the sale of the merchandise.

87.  Upon information and belief, Defendant Chaim Lefkowitz distributed large amounts of cash to each of the crime family members.

88.  Upon information and belief, Defendants Moshe and Pearl Weiss were likewise participants in the crime family business, and although never worked a day at the RICO enterprise -Defendant World Wide, they were always receiving payments from same.


**MONEY LAUNDERING**

89.  The crime family operates as a network, and where every member has a particular duty.

90.  Upon information and belief, Defendant Yoel Weiss, during the period between 2008 and June 2012, laundered certain portions of the proceeds from the said illegal cargo business, as well as the proceeds of other ventures through Defendants World Wide, Chaim Lefkowitz, Suri Lefkowitz, Defendant Gedalia Katz, Sirky Ehrman, Moshe Weiss, Pearl Weiss, Ruchie Weiss, and others.

91.  Defendant Yoel Weiss, during the period between 2008 and June 2012, laundered both checks and cash through accounts titled under the name of Defendant Gedalia Katz.

92.  Defendant Yoel Weiss is believed to still be laundering money through Defendant Gedalia Katz to this day.

93.  Defendant Yoel Weiss, during the period between 2008 and June 2012, laundered both checks and cash through accounts titled under the name of Defendant Sirky Ehrman.

94.  Defendant Yoel Weiss is believed to still be laundering money through Defendant Sirky Ehrman to this day.

95.  Defendant Yoel Weiss, during the period between 2008 and June 2012, laundered both checks and cash through accounts titled under the name of Defendant Pearl Weiss.

96.  Defendant Yoel Weiss is believed to still be laundering money through Defendant Pearl Weiss to this day.

97. Defendant Yoel Weiss, during the period between 2008 and June 2012, laundered both checks and cash through accounts titled under the name of Defendant World Wide.

98. Defendant Yoel Weiss is believed to still be laundering money through Defendant World Wide to this day.

99. Defendant Yoel Weiss, during the period between 2008 and June 2012, laundered both checks and cash through accounts titled under the name of Defendant Suri Lefkowitz.

100.      Defendant Yoel Weiss is believed to still be laundering money through Defendant Suri Lefkowitz to this day.

101.      Under the monetary relationship between Defendant Gedalia Katz and Defendant Yoel Weiss, the latter carries and makes purchases under numerous credit cards titled under the name of Defendant Gedalia Katz.

102.      Upon information and belief, Defendant Gedalia Katz, is employed by the crime family to act as a fiduciary nominee for Defendant Yoel Weiss and the crime family relating to personal and corporate credit cards, personal and corporate bank accounts, personal and corporate money management accounts, and likewise a source for

payments, bank wires, and for other necessary outgoing transactions, both incoming and outgoing.

103.     Upon information and belief, Defendant Yoel Weiss has other persons in addition to Defendant Gedalia Katz, acting as his fiduciary nominees for himself and the crime family, relating to personal and corporate credit cards, personal and corporate bank accounts, personal and corporate money management accounts, and likewise a source for payments, bank wires, and for other necessary outgoing transactions, both incoming and outgoing.

104.     Upon information and belief, Defendant Sirky Ehrman, is employed by the crime family to act as a fiduciary nominee for Defendant Yoel Weiss, relating to personal and corporate credit cards, personal and corporate bank accounts, personal and corporate money management accounts, and likewise a source for payments, bank wires, and for other necessary outgoing transactions, both incoming and outgoing.

105.     Defendant Yoel Weiss, between the period of 2008 through and including June 2012, laundered both checks and cash through accounts owned, and operated by Defendant Sirky Ehrman.

106.     Upon information and belief, as part of the money laundry arrangement with Defendant Yoel Weiss and the crime family, during the period between

2008 through and including June 2012, Defendant Sirky Ehrman provided credit cards under her name for usage by Defendant Yoel Weiss and other members of the crime family.

**THE MAIL ORDER BUSINESS**
**WIZTEL USA INC.**

107.    During the period 2008 through about the end of February 2011, and prior, Defendant Yoel Weiss, under the instructions and directions from the crime family boss, additionally operated a mail-order business under the corporate name WIZTEL USA INC. ("WIZTEL USA") from out of the residence.

108.    The mail order business was initially meant to be seen as a small "working from home" type business, while in reality it acted as a façade to cover for the busy illicit cargo business of the crime family having continuous deliveries on a residential block.

109.    Upon information and belief, mail order sales for WIZTEL USA were made through Amazon.com and other websites controlled by defendants.

110.     Upon information and belief, Defendant Yoel Weiss owned and operated WIZTEL USA together with Defendants Chaim and Suri Lefkowitz on behalf of the crime family through a particular nominee since about 2005.

111.     Upon information and belief, Defendant Yoel Weiss directed certain funds and profits of that mail-order business to be laundered through that nominee and/or Defendant Gedalia Katz.

112.     The official Brooklyn address for service of process on behalf of WIZTEL USA is a location closely affiliated with Defendant Gedalia Katz.

113.     Upon information and belief, Defendant Yoel Weiss officially closed WIZTEL USA during about October 2011, out of fear relating to serious criminal activity associated with same that were committed during January and February of 2011, but notwithstanding, currently still conducts business under that defunct name.

114.     Upon information and belief, Defendant Yoel Weiss on behalf of the crime family continues to currently run and operate a mail-order business at a different location under WIZTEL USA and other names via a nominee.

**THE PIZZA STORE PARTNERSHIP**

115.      Beginning about March of 2009, Defendant Yoel Weiss opened a pizza store on 39th Street in Brooklyn, New York.  Defendant Yoel Weiss demanded that Plaintiff, who was then six-months pregnant with her first child, must work there full time together with him.  Plaintiff insisted repeatedly that she was physically not up to it. In order to falsely induce Plaintiff to work there, Defendant Yoel Weiss represented to Plaintiff in writing that she was receiving an alleged fifty-percent partnership in the venture.  Plaintiff continued to insist that she was very weak and was not physically up to it.  It was as though her words fell on deaf ears.

116.      Defendant Yoel Weiss forced Plaintiff to help him start up the pizza store and work standing next to the hot oven.  Defendant Yoel Weiss heavily advertised and undercut all the neighborhood pizza stores by over thirty percent.  As a result, the store was continuously busy and the work was extremely strenuous.  Plaintiff became very uncomfortable from the hot temperature near the oven. Subsequently, Plaintiff was directed to fold the pizza boxes and work the cashier.

117.      Plaintiff was intimidated with verbal abuse to force her to continue working when she insisted that she needed rest and could not function.

118.     Plaintiff was not paid for her work, but falsely told she was a partner that would share in the eventual profits.  Plaintiff worked at the pizza store for three months without receiving any compensation or share of profits.

119.     Subsequently, after continuously demanding payment for her previous work at the pizza store, in September 2009, Defendant Yoel Weiss facetiously with intent to degrade and humiliate, counted in front of Plaintiff twenty-one thousand dollars in all cash alleging that it represented her share of the pizza store's financial profits, only to keep the money for himself, stating that he needed it to pay his Latino workers operating the cargo business out of the residence.

120.     Defendant Yoel Weiss additionally stole plaintiff's original agreement reflecting her fifty-percent partnership in the pizza store.

121.     Plaintiff was directed with bodily threat not to discuss with him ever again payment for her work at the pizza store.

## BURTOLUCCIS RESTAURANT & BURTOLUCCI'S CATERING

122.     During about May 2010, Defendant Yoel Weiss purchased an existing Brooklyn restaurant named "BURTOLUCCI'S RISTORANTE, LLC" for fifty thousand dollars cash.

-37-

123.     The said fifty thousand dollars cash was derived from the proceeds from the illegal cargo business, operated at the residence.

124.     At the very same time, Defendant Yoel Weiss opened a catering division by the name BURTOLUCCI'S CATERING CORP.

125.     Plaintiff who was then pregnant with her second child was forced by Defendant Yoel Weiss to labor exhaustingly full time at the aforesaid restaurant without ever receiving any pay.  Plaintiff worked at the restaurant for five months from approximately June 2010 until October 2010.

126.     Besides serving the customers at the restaurant, Plaintiff was likewise required to watch her infant son, often left in a carriage or infant seat behind the counter of the restaurant.

127.     Plaintiff repeatedly begged and cried to Defendant Yoel Weiss that she was pregnant and the work and tension was too taxing for her; that she did not want to work at his restaurant; that she wanted to be out of his life; that she wanted to live alone without him.

128.     Plaintiff continuously reminded Defendant Yoel Weiss that they were not civilly married and that she had every legal right not to work in his restaurant. In response, Plaintiff was threatened with being committed to a psychiatric ward. Plaintiff was furthermore slapped, repeatedly raped, verbally abused; including told she was lazy and worthless, and blamed that the restaurant was loosing money because of her.

129.     Upon information and belief, the catering corporation, and the aforesaid restaurant also served to wash certain proceeds that Defendant Yoel Weiss received from his illegal cargo business.

130.     It is additionally believed that Defendant Yoel Weiss employed the use of his credit cards, listed on the names of his nominees, to assist him with washing some of those proceeds.

## THE COMPUTER PROGRAMING BUSINESS

131.     For many years prior to Defendant Yoel Weiss becoming the business manager and CFO of the crime family boss, he ran his own computer programming business.  Following his heavy involvement with investing the stolen proceeds of the crime family boss, Defendant Yoel Weiss gave up most of his computer programming accounts but maintained a select few that he for whatever reason personally

prized. One such account of Defendant Yoel Weiss is believed to have been associated with Doctors Olitsa Roth and Rochelle Braun, two pediatricians that work together in Borough Park, Brooklyn.

**THE LIFE INSURANCE POLICY**

132.     During about 2009, Defendant at least twice forced Plaintiff against her will to sign and "cooperate" regarding his obtaining a life insurance policy on her. Upon information and belief, the policy or policies are for at least one million dollars; Defendant Yoel Weiss owns the policy or policies under a nominee; and is believed to have his name listed as the beneficiary.

133.     Subsequently in late 2009, Defendant Yoel Weiss deliberately and without any cause, swerved his car while driving in Flatbush, Brooklyn in a manner so as to nearly cause an automobile collision directed at the passenger side of the car where Plaintiff was seated.  Plaintiff was pregnant with her first child at the time of this occurrence.  Plaintiff who was scared to near death asked Defendant Yoel Weiss if he is trying to kill her because he has an insurance policy on her life, to which he just laughed.

134.     Plaintiff likewise believes that the aforementioned "punishment" administered by Defendant Yoel Weiss of not permitting Plaintiff in November 2010 to take medication for a life threatening urinary track infection, was directly related to his financial interest in the aforesaid life insurance policy or policies.

135.     Upon information and belief, the aforesaid life insurance policy or policies remain current and in effect.

136.     As long as Defendant Yoel Weiss maintains any control of the aforesaid life insurance policy, Plaintiff believes her life will remain in extreme danger.

## PLAINTIFF IS ABDUCTED TO CANADA

137.     In early January 2011, two months after the birth of Plaintiff's second child, Plaintiff was without any advance notice shockingly ordered by Defendant Yoel Weiss to travel the next day to Toronto in Ontario, Canada with only her nursing infant, where she would be provided soon thereafter with employment arranged through his brother Defendant Baruch Weiss, who is a Canadian resident.  Defendant Yoel Weiss told Plaintiff that her older infant would not be accompanying her on the trip, to ensure Plaintiff's full compliance with Defendant Baruch Weiss.  Defendant Yoel Weiss instructed Plaintiff that any non-compliance with Defendant Baruch Weiss's rules will prevent her from ever seeing her child again.

138.     Plaintiff cried bitter tears that she did not want to leave her oldest infant behind; that she did not know anyone in Canada; and did not want to travel there, nor wish to work in Canada.

139.     Defendant Yoel Weiss further advised Plaintiff that Defendant Baruch Weiss, the brother of Defendant Yoel Weiss, will be taking care of all Plaintiff's needs in Canada, including arranging working papers for her and that she is expected to fully cooperate with whatever he says.

140.     Defendant Yoel Weiss additionally stated that he was paying a lot of money to Defendant Baruch Weiss to care for Plaintiff and that she must adhere to everything he tells her.

141.     Later that same day, Plaintiff overheard Defendant Yoel Weiss speaking on the phone to Defendant Baruch Weiss discussing finding off the books employment for her, and also his arranging for her Canadian work papers.

142.     That same day, Defendant Yoel Weiss instructed Plaintiff that she would be traveling by plane first to Buffalo, New York, where she should disembark with the nursing infant and that Defendant Baruch Weiss would be waiting at the airport with a car to drive them to Toronto, Canada.

143.     Plaintiff understood from her past employment experience that she would not be permitted by Defendants Yoel and Baruch Weiss to keep any of her earnings.

144.    Plaintiff had no reason as to why she should go to Canada, other than the fear of the threat relating to her oldest infant in the event she did not comply.

145.    Plaintiff believed she had no physical means to break loose of Defendant Yoel Weiss' subjugation.

146.    Defendant Yoel Weiss refused to permit the older infant to travel with his mother to Canada, but instead held him in Brooklyn against the will of the Plaintiff mother, in order to have the infant serve as a security and hostage to assure Plaintiff's full compliance with all his and his brothers' directives.

147.    Prior to Plaintiff leaving New York, Defendant Yoel Weiss instructed Plaintiff not to engage in conversations with anyone at the airport or on the plane. He further advised Plaintiff that he was sending one of his friends to travel obscurely with her on the plane to Buffalo, to keep a watch on her that she does not carry on any conversations with anyone on the plane.

148.    Defendant Baruch Weiss, met Plaintiff carrying her nursing infant at the Buffalo airport, and while acting in harmonious concert and conspiracy with Defendant Yoel Weiss, forced Plaintiff who was crying uncontrollably to enter his car

unwillingly by threatening her that if she refused his directive he would call Defendant Yoel Weiss, which was in essence a threat directed against her and her oldest child.

149.     Defendant Baruch Weiss, while acting in harmonious concert and conspiracy with Defendant Yoel Weiss, forced Plaintiff to enter his car for the purpose of forcing her to travel with him across the United States border into Canada for the purpose of holding Plaintiff confined as a slave and to engage her into forced servitude for a period of months or more, and where her movements would be continuously watched and restricted by said Defendant Baruch Weiss; and where additionally she would be repeatedly raped by his brother Defendant Yoel Weiss when he visits Toronto.

150.     Plaintiff advised Defendant Baruch Weiss immediately prior to entering the car and while driving still on United States soil, that she did not want to go to Canada; that Defendant Yoel Weiss had snatched away her oldest son and threatened her that she would not see him again if she did not listen to him; that she wanted nothing to do with Defendant Yoel Weiss; that she wanted to be out of his life; that she found him and his sexual advances repulsive and repugnant; that she was never civilly married to Defendant Yoel Weiss; and that he had no right to force her to travel to Canada.  In response, Defendant Baruch Weiss told Plaintiff to shut her mouth for the rest of the trip, or he will call Defendant Yoel Weiss.

151.     Defendants Baruch Weiss and Yoel Weiss, acting in concert and conspiracy, knowingly and with full disregard for the law perpetrated an egregious across the border kidnapping involving repeated rapes, indictable both in the United States and Canada, and will very soon be facing fines and imprisonment of up to 20 years on each count.

152.     The distance between Buffalo and Toronto is approximately ninety-eight miles.  For the reason explained next, Defendant Baruch Weiss spent at the very minimum four hours traveling in traffic back and forth from Toronto, not including the additional time he spent waiting for Plaintiff's arrival at the Buffalo airport.

153.     Defendants Yoel Weiss and Baruch Weiss calculatedly refrained from having Plaintiff travel by plane, as it would have meant her being questioned by a Canadian customs agent at the airport as to the purpose of her trip.  They feared Plaintiff would breakdown and reveal to the customs agent that she had no purpose whatsoever to travel to Canada other than her fearfulness of having her oldest child taken from her.

154.     On the other hand, by having Plaintiff cross the border in a car driven by Defendant Baruch Weiss, it's the car's driver that is predominately questioned at the border.  Passengers are usually questioned only as to their name and country of citizenship. It was believed by both Defendants Yoel Weiss and Baruch Weiss that

Plaintiff would be too afraid to speak anything additional in the presence of Defendant Baruch Weiss.

155.     Defendant Baruch Weiss brought Plaintiff to a Toronto location, where he threatened her not to leave unless she first obtained permission from him. Defendant Baruch Weiss advised Plaintiff that her confined location was fully monitored by surveillance cameras, and that she was being observed every moment. He further threatened her that he would call Defendant Yoel Weiss if he ever discovers her leaving the premises without his permission.

156.     Plaintiff insisted to know why she had to work in Canada, and could not remain in New York, and why is she being held against her will. Defendant Baruch Weiss told her; "You are here because Yoely [Defendant Yoel Weiss] wants you here".

157.     Plaintiff was left at her confined location without any money, in order to assure she could not travel or run away. Plaintiff's passport and the infant's birth certificate was immediately confiscated upon her arrival in Toronto, Canada by Defendant Baruch Weiss, who subsequently gave the documents to Defendant Yoel Weiss.

158.     Plaintiff's captivity in Canada was like living in hell, and lasted approximately two and one half months.

159.     Defendant Baruch Weiss had a key to the confined location and would enter by surprise visits during the day and night to check on Plaintiff and bring her small portions of food.  Plaintiff was a nursing mother and required more food, which was most often never made available.  Plaintiff was additionally made very uncomfortable with Defendant Baruch Weiss entering the confined location anytime that he wished without ever first announcing himself.

160.     On two or three occasions, following Plaintiff begging that she needed more food items.  Defendant Baruch Weiss gave her a small limited amount of money and followed her to the grocery store and back to her location, never forgetting to remind her that she cannot leave without his approval, and that she's being watched on video cameras.

161.     On the first or second weekend that followed Plaintiff's arrival in Toronto, Defendant Yoel Weiss took a plane together with the older infant directly to Toronto.  Upon his arrival to the Plaintiff's confined location, the Defendant Yoel Weiss pushed Plaintiff into the bedroom, locked the door, while keeping the two infants alone in the adjacent room, and demanded sex.  Plaintiff refused, but Defendant Yoel Weiss ignored her words.  Plaintiff begged, screamed, and cried that she didn't want him near her; that she loathed the sight of him; that she wanted nothing more than to be forever rid of him.  Plaintiff reminded him that they were not civilly married and that he was legally

nothing more than a rapist. There was no way for Plaintiff to escape. Plaintiff's

disparaging remarks resulted in her getting her arm twisted in pain, repeatedly slapped in

the face, beaten, and repeatedly raped. Following the repeated rapes Defendant Yoel

Weiss blamed Plaintiff for being disobedient to him and for not acting "normal".

162.     On the weekends that followed, whenever Defendant Yoel Weiss

arrived he would demand sexual relations and rape Plaintiff when she refused. Plaintiff

believed she had no way to escape Defendant Yoel Weiss.

163.     Plaintiff was forced to remain confined in Toronto until about mid-

March 2011.

164.     During about mid-March 2011, Plaintiff and Defendant Baruch

Weiss had a clash with words at her confined location, relating to Plaintiff not receiving

sufficient food for herself and her then under three-year-old toddler. Plaintiff said she

was not going to allow Defendants Yoel and Baruch Weiss to control her life anymore;

clearly implying that she was going to run away. Additionally, Plaintiff called Defendant

Baruch Weiss a criminal kidnapper, adding that he forced her to cross the U.S./Canadian

border against her will. Plaintiff's words clearly shocked Defendant Baruch Weiss as he

quickly left without speaking a word, and apparent from what follows next, called his

brother, Defendant Yoel Weiss and demanded that he remove Plaintiff out of Canada

immediately.

165.     Within a matter of hours, Defendant Yoel Weiss, arrived by plane from New York to take Plaintiff and her two infants back to Brooklyn, New York.

166.     Evidently, for the reason set forth hereinabove, and particularly after the clash with Defendant Baruch Weiss, Defendant Yoel Weiss was afraid to permit Plaintiff to travel over the border by plane.  Accordingly, Defendant Yoel Weiss transported Plaintiff and the two infants with a borrowed car back to Brooklyn, New York.

## FURTHER KIDNAPPING BY DEFENDANTS MOSHE AND PEARL WEISS IN BROOKLYN, NEW YORK

167.     Arriving in mid-March 2011 from Canada by car, Defendant Yoel Weiss brought Plaintiff with her two infants directly to the home of his parents and sister, located at 1234 - 47th Street, Brooklyn, New York (hereinafter the "Weiss house"). His parents, being Defendants Moshe and Pearl Weiss; his sister being Defendant Ruchie Weiss. The aforesaid defendants were all instructed by Defendant Yoel Weiss to carefully watch that Plaintiff does not attempt to escape.

168.     At the Weiss house, Plaintiff and her children were dedicated a one room area adjacent to a small kitchen that was entirely empty of food.  Plaintiff's coat

and the children's outwear were removed from her possession to prevent escape. Plaintiff was given no money, and no access to any phone, and told by Defendants Yoel, Ruchie, Moshe and Pearl Weiss that their house is monitored with surveillance cameras and that her movements are being watched and recorded on camera, and that if they catch her attempting to escape, or even leave her designated area they would have her committed to a psychiatric ward and her children would be taken away from her.

169.    Defendant Ruchie was initially instructed by her brother and parents to occasionally befriend Plaintiff and play the "good cop" roll, in order to learn from Plaintiff her thoughts and if she was planning to escape.

170.    Plaintiff was in great fear to attempt escape; she felt demoralized and sub-human; was made to feel helpless; was falsely made to feel guilty and responsible for her predicament; and strongly feared her captives would have her committed to a psychiatric ward in order to remove the two infants from her.

171.    Plaintiff was forced to remain with her two children in that small-dedicated area for approximately eight months, until mid-November 2011, with exception to about three nights, as explained further herein.

172.    During the aforesaid eight months, Plaintiff was routinely beaten and repeatedly raped by Defendant Yoel Weiss.

173.    As explained further herein, Plaintiff and her children were intentionally underfed; were suffering from malnutrition; and were denied proper medical treatment. The Defendants Moshe Weiss, Pearl Weiss, Yoel Weiss and Ruchie Weiss deliberately made Plaintiff feel worse than a prisoner in hell.

174.    Defendant Moshe Weiss and/or Defendant Pearl Weiss would intentionally humiliate Plaintiff by walking into her room multiple times during the day without ever knocking. Plaintiff was often nursing and the spot checks by defendants, particularly by Defendant Moshe Weiss, who enjoyed parading around Plaintiff in his underwear, made her very uncomfortable.

175.    Defendant Moshe Weiss and/or Defendant Pearl Weiss delivered to Plaintiff food usually twice a day. The food amount provided was little and insufficient for Plaintiff and her oldest child. Plaintiff complained and asked Defendant Moshe Weiss for more food; only to be told by him "it's not my department". Defendant Pearl Weiss echoed the same words.

176.    Moreover, beginning with Plaintiff's arrival in mid-March of 2011, Defendant Pearl Weiss, acting in concert and conspiracy with Defendant Yoel Weiss, would often make Plaintiff feel false guilt by purporting that her son, Defendant Yoel Weiss, out of his deep love and great concern for Plaintiff, gave up the

residence/warehouse on East 27th Street in Flatbush because Plaintiff had complained that she didn't want to live there, and that now her son, Defendant Yoel Weiss, was forced to spend out of his own pocket additional thousands of dollars a month for another warehouse. Defendant Yoel Weiss made it a habit to continuously tell Plaintiff the same nonsense. Subsequently, from September 2011 through June 2012, Defendant Yoel Weiss repeated the same fiction to justify his confiscating Plaintiff's entire earnings from her part time employment.

177.     On a few occasions Defendant Suri Lefkowitz came by to check on Plaintiff and to humiliate her, threatening her not to try to leave, while almost always reminding her to keep a smile because she's on camera.

178.     Defendant Yoel Weiss would habitually arrive in the late of night, usually when Plaintiff was already asleep. He would often wake Plaintiff and demand sex with her, and rape her when she refused.

179.     Many of the aforesaid rapes occurred after Plaintiff was physically beaten, or threatened with murder, or threatened to being committed to a psychiatric ward and having her children taken to Canada so that she would never see them again.

180.     Defendants Moshe Weiss, Pearl Weiss and Ruchie Weiss very often heard Plaintiff being beaten and crying in pain, while telling Defendant Yoel Weiss to

keep his hands and filthy body off her.  The aforesaid defendants were made fully aware by Defendant Yoel Weiss himself that he was repeatedly raping Plaintiff.

181.     The aforesaid abhorrent threats by Defendant Yoel Weiss followed by his raping Plaintiff, was not exclusive to his parent's home, but was common and frequent during all of the Plaintiff's four years in captivity.

182.     The Defendants Moshe, Pearl, and Ruchie Weiss, acting in harmonious concert, willfully participated and committed an egregious kidnapping, involving repeated rapes, as well as other felonies, indictable under both New York State and United States federal law.

183.     Plaintiff will seek that all defendants herein that participated in the kidnapping and repeated rapes, including the kidnapping and rape that occurred in Canada, be listed on the governments sex offender registry.

184.     Beginning with the end of May or early June of 2011, there were only three occasions that Defendant Yoel Weiss granted permission for Plaintiff to go on the street to shop, specifically without her two infants, one of which was nursing exclusively.  The conditions were as follows: that he knows exactly where Plaintiff is going; what Plaintiff is buying; and that Plaintiff return back to the Weiss house within a designated short time.  Punishment for failure to comply was promised to be swift.

185.    While held captive in the Weiss house during March through June Plaintiff and the infant children were severely underfed.

**FORCED TO NURSE FOR OVER TWENTY MONTHS**

186.    Moreover, as seen more fully further hereinbelow, as part of the scheme to keep a direct tight control over Plaintiff's whereabouts the Defendant Yoel Weiss ordered and instructed Plaintiff, by means of threats to her person and toward her custody over the infants, that the younger infant was to remain nursing exclusively and not be fed any other food or liquids.  In other words, while the exclusively nursing infant was physically held in the hands of Defendant Yoel Weiss, the Plaintiff was not independent and free to escape.

187.    Plaintiff was forced by Defendant Yoel Weiss to continue nursing her infant daughter for over twenty months, until July 2, 2012, the day that Plaintiff makes her final escape with the two infants from the Weiss crime family.

**AT THE OFFICE OF THE PEDIATRICIAN**

188.    One morning during about May or early June 2011, Plaintiff realized the health of her two infants was deteriorating and that she needed to get them immediately to a pediatrician.  As a result of the Plaintiff's motherly instincts, her courage to defy the directives of Defendants Yoel Weiss, Moshe Weiss and Pearl Weiss were set in motion.  While no one was looking, Plaintiff quietly left the Weiss house with

her two infants and headed to the office of the infants' pediatricians, Doctors Rochelle

Braun and Olitsa Roth, two neighborhood doctors working together at he same medical

office.

189.     The infants were seen by Doctor Rochelle Braun, and were indeed

diagnosed as underfed/suffering from malnutrition.  Said diagnosis was verbally

communicated by Doctor Rochelle Braun to Plaintiff.

190.     Doctor Rochelle Braun advised Plaintiff that she must feed the

infants better.

## BATTERY & ASSAULT IN FURTHERANCE OF PLAINTIFF'S ABDUCTION

191.     During approximately June or early July 2011, subsequent to

bringing the infants to the office of the aforementioned pediatricians, Plaintiff was

permitted to possess for a number of days a cell phone that was continuously monitored

by Defendant Yoel Weiss.  On one particular Wednesday morning during that same

approximate time period, Plaintiff discovered an expensive gold and diamond designer

name brand watch within a bag left in her room by Defendant Yoel Weiss the night

before.  Plaintiff was familiar with that particular gold watch.  On one summer evening in

2008 Defendant Yoel Weiss gave that same watch to Plaintiff as a gift, telling her that it is valued over thirty-five thousand dollars on the wholesale market, but a few hours later took it back saying that it was too expensive to leave with her and that she could only wear it with his permission. He further insulted Plaintiff, telling her to the affect "as I would hang expensive art on my living room wall, so is my expensive jewelry worn by you." Plaintiff thereafter despised the watch. Defendant Yoel Weiss forced Plaintiff to wear that watch on some occasions when he took her among his friends, so as to give the false appearance that he is a very classy guy that spends on his woman. Upon returning to the residence he would immediately demand that Plaintiff remove the watch from her wrist and give it back to him.

192.    Plaintiff took the watch, believing that if she could permanently escape with the watch, she could sell the watch, rent an apartment, and sustain herself and the children for at least a few months.

193.    However, despite the Plaintiff's very fearful mindset, she had apparently formed a paradoxical emotional bond with her captor, and in her hypnotic state actually called Defendant Yoel Weiss to advise him and get his permission to escape permanently with the two infants, while additionally advising him that she was taking the gold watch with her. Defendant Yoel Weiss, immediately darted back to the Weiss house in an angry rage, and began physically beating the Plaintiff mercilessly on her head and the rest of her body.

194.     Plaintiff attempted to run away from the attack, believing she was going to be killed, and left her designated area to another part of the Weiss house, that was specifically off limits to her, while slamming and locking a door behind her.

195.     Defendant Yoel Weiss in his uncontrollable great rage physically smashed and broke apart the door, and with use of enormous force banged Plaintiff against the wall, injuring plaintiff's right arm and causing her to pass out from the pain. When Plaintiff gained consciousness she found herself on the floor upstairs in the Weiss house; her face was swollen; her mouth was bleeding; her head was aching terribly; her arm was swollen and in great pain; and the gold watch, together with her wallet and phone were removed from her possession. Moreover, her two children were gone. Plaintiff used an upstairs phone that she found to call a certain Rabbi Horowitz, a rabbi who lived a few blocks away and was well acquainted with the Weiss family. Plaintiff told him she wanted to call the police and arrest Defendant Yoel Weiss and get her children back.

196.     Horowitz was a bad choice to speak with. Plaintiff at that time was unaware that Defendant Moshe Weiss and his family were big donors to his religious causes, and that Horowitz was as a result not neutral. Horowitz insisted that nothing terrible had happened; the swelling will go down; that it was wrong for Plaintiff to

contact the police; that if the police arrived it would be an embarrassment for the family and disgraceful in the future for her own two children.

197.     About twenty minutes later Defendant Yoel Weiss arrived back at the Weiss house with the two children, the phone and her wallet. Defendant Yoel Weiss began as usual to blame Plaintiff for what happened; telling her that she was not normal; in the hope to put her on a guilt trip. Defendant Yoel Weiss told Plaintiff that her arm was bruised and swollen because she was trying to victimize the infants by running away, and that while she was running away for no good reason she had banged into the wall and passed out.

198.     Defendant Yoel Weiss believing he had calmed down the situation left the Weiss house, leaving the Plaintiff alone together with her two infants. However, as soon as he left, and before giving any opportunity for Defendants Moshe and Pearl Weiss to come down and begin guarding Plaintiff and the two infants, Plaintiff darted out the door to the street with the two infants; taking no clothing; and went to her mother's house, and remained there for approximately twenty-four hours.

199.     On the following day, a Thursday, Plaintiff arranged to travel with her two infants to stay by her sister, who lives in Rockland County. Plaintiff further arranged for her younger brother to drive her together with the two infants to their sister.

200.     However, Plaintiff required clothing for herself and the two infants, and told her brother to drive her first to the Weiss house, believing she could get in and out quick enough without being noticed by Defendants Moshe and Pearl Weiss.

201.     Once inside the Weiss house, Defendant Ruchie Weiss met Plaintiff. Because Defendant Ruchie Weiss had previously always played the roll of the good cop, and made herself appear as opposed to the mistreatment of Plaintiff, the Plaintiff was mislead and confided in her of her intent to move to her sister. Immediately, Defendant Ruchie Weiss, revealed her true colors, as she ran upstairs while calling for her father Defendant Moshe Weiss to come downstairs and also shouting to her mother to immediately call Defendant Yoel Weiss.

202.     Plaintiff ran out to the car to tell her brother to go inside the Weiss house and take out her clothing. Defendant Moshe Weiss upon seeing the Plaintiff's brother about to leave the house with her clothing used his body to try to block him. There followed some physical shoving together with some screaming, but Plaintiff's brother managed to exit with the Plaintiff's clothing.

203.     However, just before Plaintiff and her brother set out to travel Defendant Yoel Weiss arrived and grabbed away the eight-month old nursing infant from the back seat of the car and absconded.

204.     Plaintiff could not leave Brooklyn without the nursing infant. Plaintiff tried repeatedly to call Defendant Yoel Weiss for about three hours, but he would not answer the phone.  However, after a few hours, during which time the nursing baby was starving and screaming from hunger, Defendant Yoel Weiss called Plaintiff and demanded that if she wants to see her daughter again she should meet him at the home of Rabbi Horowitz.

205.     Plaintiff while still in excruciating pain from the day before went back to Horowitz; nursed the starving infant; followed by listening to a repetition of Horowitz's absurdities about how nothing terrible had happened.

206.     Subsequently, Defendant Yoel Weiss at the urging of Rabbi Horowitz agreed that he would drive Plaintiff to her sister only for over the Shabbos weekend.  However, once they arrived outside the sister's home Defendant Yoel Weiss only permitted the Plaintiff and the nursing infant to leave the car.  He insisted that the older child, then 2 years old, was going back with him to Brooklyn.

207.     Following the aforementioned weekend, Defendant Yoel Weiss continued to use the "older child card" that he was holding to threaten, extort and then rape Plaintiff.  Defendant Yoel Weiss advised Plaintiff that she would never again be permitted to see her oldest child, unless she agreed to allow him to pick her up with his

car from her sister's house in Rockland County to drive her back to the Weiss house in Brooklyn, New York.

208.    Subsequently, Defendant Yoel Weiss, acting in concert and conspiracy with Defendant Sirky Ehrman, arranged for same to meet him and Plaintiff in Manhattan where Defendant Sirky Ehrman forcefully grabbed away the nursing infant from a screaming Plaintiff and fled, permitting Defendant Yoel Weiss to then expand the threat and extort Plaintiff to follow him to a Manhattan hotel where he repeatedly raped her.

209.    Defendant Sirky Ehrman overtly acknowledged that she was fully cognizant of the planned rape, telling Defendant Yoel Weiss with a smirk, "have a good time" prior to running away with the infant.   On the very next day, in the presence of Plaintiff, Defendant Sirky Ehrman received monetary compensation from Defendant Yoel Weiss for assisting him in facilitating the aforesaid rape.

210.    Following the aforesaid rape, the Defendant Yoel Weiss continued to use the threat of the two infants to force, threaten, and extort Plaintiff to return back to the Weiss house, where Plaintiff was reunited with her two infants and once again confined to the same "prisoner quarters" located at the Weiss house, where she was previously, for another approximate five months, until November of 2011.

211.     On some few occasions, Plaintiff was permitted to take the infants to a local park, but to prevent a repeat of the previous attempt to escape, Defendant Ruchie Weiss was required to escort and keep a close watch on Plaintiff.   Likewise, Plaintiff was never permitted to go shopping unless closely followed by Defendant Ruchie Weiss or another crime family member.

## FURTHER FORCED SERVITUDE FROM SEPTEMBER 2011 TO JUNE 2012

212.     During about early September 2011, Defendant Yoel Weiss, acting in concert and conspiracy with Defendants Moshe Weiss, Pearl Weiss, and Ruchie Weiss, arranged what he saw to be suitable for his needs, a part time employment for Plaintiff at an elementary school in the neighborhood, where both his aunt and first cousin were likewise employed, and where Plaintiff would believe she was being constantly watched. Accordingly, Plaintiff was given four hours a day part time employment in a classroom as a paraprofessional or shadow, assisting a young pupil with a disability, for the school term beginning September 2011, and where the teacher's assistant of that class was the aforesaid cousin.

213.     As will be soon explained, Defendant Yoel Weiss, acting in concert and conspiracy with Defendants Pearl Weiss, Ruchie Weiss, and Moshe Weiss, forced Plaintiff by means of threats, directed at her and her children, into the aforesaid employment as their peon, and where her daily absence served overtly detrimental to both

the physical and emotional health of her nursing infant, and where every penny of her earnings was forcefully confiscated from her under the guise of a fabricated debt payoff.

214.    Plaintiff worked at the elementary school from early-September 2011 through mid-June 2012, from 9:00 A.M. until 1:00 P.M.

215.    Plaintiff was forced by Defendant Yoel Weiss to exclusively nurse the infant in order to control Plaintiff and keep from going anywhere other than to the infant's location immediately after work.

216.    As previously stated herein, from mid-March 2011 until approximately mid-November 2011, Plaintiff remained held at 1234 – 47th Street, Brooklyn, New York as a prisoner forced to suffer aggravated sexual abuse by Defendant Yoel Weiss, who repeatedly and routinely raped Plaintiff by means of assault, physical force, and/or other threats.

217.    From early September 2011 through June 2012, beginning at 8:45 A.M., Plaintiff was forced by Defendant Yoel Weiss to leave the nursing infant with him. On most days, Plaintiff was instructed by Defendant Yoel Weiss that after work at 1:00 PM to pick up her baby at his warehouse located at 1470 – 39th Street, Brooklyn, New York.  Upon arriving at the warehouse at approximately 1:15 P.M., Plaintiff would always without fail find her nursing infant screeching from hunger pain, while most often

being "watched" by an undocumented off the books Latino laborer fully involved in packing or unpacking corrugated boxes, which clearly placed the infant in great danger. On a some few occasions Plaintiff was advised the infant was staying with Defendant Pearl Weiss at 1234 – 47th Street, Brooklyn, New York, and where the infant was likewise grossly neglected –left to cry from hunger pain in a room all alone till she was totally exhausted. On some occasions the infant was left with another Weiss family member and likewise permitted to starve and suffer.

218.     Plaintiff received a total of sixty dollars per day from the school. Plaintiff worked steady from Monday through Friday, beginning September 2011 through June 2012.  Every single penny of Plaintiff's earnings where immediately confiscated by Defendant Yoel Weiss.

219.     After Plaintiff's salary check was deposited in her bank account, Defendant Yoel Weiss would force Plaintiff using a variety of different threats toward her to sign and issue him checks representing the full amount of her salary.

220.     Defendant Yoel Weiss told Plaintiff that he was taking her entire salary because on account of her he gave up the lease previously held on the East 27th Street residence/warehouse; and therefore Plaintiff was responsible to reimburse him for the money he was required to pay as rent for his current warehouse.

221.     Plaintiff under her state of forced servitude and peonage was not permitted to keep a single penny of her earnings.

222.     Notwithstanding Plaintiff's full right to collect damages, the United States government pursuant to 18 U.S.C. §1594 is entitled by law to confiscate the entire real property located at 1234 - 47th Street, in the Borough Park section of Brooklyn, New York, currently occupied by Defendants Moshe Weiss, Pearl Weiss, Ruchie Weiss, and Yoel Weiss, and currently owned by Defendants Sirky Ehrman and Pearl Weiss.

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION

223.     Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

224.     That as a result of the defendants' violations under 18 USC §1962(a) while acting in concert, Plaintiff has been damaged in the amount of twenty million dollars.

## AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION

225.     Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

226.     That as a result of the defendants' violations under 18 USC §1962(d) while acting in concert, Plaintiff has been damaged in the amount of twenty million dollars.

## AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION

227.     Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

228.     That as a result of Plaintiff's forced state of peonage, the defendants committed violations under 18 USC §1581, together with kidnapping and multiple rapes of Plaintiff, causing the Plaintiff to be damaged in the amount of sixty million dollars; and Plaintiff is legally entitled to collect such damages pursuant to 18 U.S.C. §1595.

## AS AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION

229.     Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

230.     That as a result of Plaintiff's forced labor, the defendants committed violations under 18 USC §1589(a)(1)(2)(3)(4)(b)(d), together with kidnapping and multiple rapes of Plaintiff, causing the Plaintiff to be damaged in the amount of sixty

million dollars; and Plaintiff is legally entitled to collect such damages pursuant to 18 U.S.C. §1595.

## AS AND FOR PLAINTIFF'S FIFTH CAUSE OF ACTION

231.     Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

232.     That as a result of Plaintiff being abducted together with her infant, and forcefully transported from the United States to Ontario, Canada with respect to either peonage, slavery, involuntary servitude, or forced labor, the defendants committed violations under 18 USC §1590(a), together with continued kidnapping and multiple rapes of Plaintiff, causing the Plaintiff to be damaged in the amount of sixty million dollars; and Plaintiff is legally entitled to collect such damages pursuant to 18 U.S.C. §1595.

## AS AND FOR PLAINTIFF'S SIXTH CAUSE OF ACTION

233.     Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

234.    That as a result of Plaintiff having been cruelly kidnapped by the defendants over a period of nearly four years, Plaintiff has been damaged in the amount of thirty million dollars.

## AS AND FOR PLAINTIFF'S SEVENTH CAUSE OF ACTION

235.    Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

236.    That as a result of Plaintiff having been cruelly inflicted by the herein defendants with forced servitude over a period of nearly four years, Plaintiff has been damaged in the amount of thirty million dollars.

## AS AND FOR PLAINTIFF'S EIGHTH CAUSE OF ACTION

237.    Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

238.    That as a result of Plaintiff having been repeatedly raped by Defendant Yoel Weiss over a period of four years, Plaintiff has been damaged in the amount of sixty million dollars.

## AS AND FOR PLAINTIFF'S NINTH CAUSE OF ACTION

239.     Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

240.     That as a result of Plaintiff having been repeatedly threatened by Defendants over a period of four years, that they were going to commit her to an insane asylum and have her children forcefully taken from her, Plaintiff has been damaged in the amount of thirty million dollars.

## AS AND FOR PLAINTIFF'S TENTH CAUSE OF ACTION

241.     Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

242.     That as a result of defendants having committed against Plaintiff a *prima facia* tort, Plaintiff has been damaged in the amount of sixty million dollars.

## AS AND FOR PLAINTIFF'S ELEVENTH CAUSE OF ACTION

243.     Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

244.     That as a result of Plaintiff having been repeatedly extorted by defendants over a period of four years, Plaintiff has been damaged in the amount of thirty million dollars.

## AS AND FOR PLAINTIFF'S TWELFTH CAUSE OF ACTION

245.     Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

246.     That as a result of Plaintiff having been repeatedly robbed by defendants, acting in concert and conspiracy, and left penniless without means of income, Plaintiff was financially damaged in the amount of twenty million dollars.

## AS AND FOR PLAINTIFF'S THIRTEENTH CAUSE OF ACTION

247.     Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

248.     That as a result of defendants' negligence toward Plaintiff, same has been inflicted with severe emotional pain, distress and trauma, causing Plaintiff to be damaged in the amount of thirty million dollars.

## AS AND FOR PLAINTIFF'S FOURTEENTH CAUSE OF ACTION

249.     Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

250.     That as a result of all the foregoing Plaintiff is entitled to punitive damages in the amount to be determined by a jury.

## AS AND FOR PLAINTIFF'S FIFTEENTH CAUSE OF ACTION

251.     Plaintiff repeats and realleges each and every allegation as more fully set forth hereinbefore as if fully set forth hereinafter.

252.     That this Honorable Court should declare any and all life insurance policies bearing the name of Plaintiff as the insured, and held by Defendant Yoel Weiss and/or any other defendants herein, as of the day of the filing of the instant action, to be deemed null and void; or in the alternative to direct the defendants to transfer the rights, title and interest in any such policies to the full control of Plaintiff.

W H E R E F O R E, Plaintiff prays that this Honorable Court should grant each and every one the fifteen causes of action set forth hereinabove; and any other relief this Courts deems just and proper.

DATED: BROOKLYN, NEW YORK
           DECEMBER 3, 2013

RIVKA WEISS – Plaintiff
Appearing Pro Se
1689 48th Street
Brooklyn NY 11219
(917) 618 4481

Civil Action No. CV

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

x------------------------------------------------------------x

RIVKA STEIN,

Plaintiff,

-against-

WORLD WIDE PLUMBING SUPPLY INCORPORATED,
MOSHE WEISS a/k/a MOSES WEISS a/k/a MOSHE
WEISZ, YOEL WEISS a/k/a JOEL WEISS a/k/a DAVID
WEISS a/k/a DAVID STERN a/k/a JOE WEISS, PEARL
WEISS, CHAIM LEFKOWITZ, SURI LEFKOWITZ a/k/a
SARAH WEISS LEFKOWITZ, GEDALIA DANIEL
KATZ a/k/a DANIEL KATZ, BARUCH WEISS, SIRKI
EHRMAN a/k/a SIRKY EHRMAN a/k/a SIRKA WEISS
EHRMAN, RUCHIE WEISS a/k/a RACHEL GOLDA
WEISS, ABRAHAM BERGER a/k/a ABE BERGER,
BURTOLUCCI'S CATERING CORP., and JOHN DOE #1
through #30,

Defendants,

x------------------------------------------------------------x

-------------------------------------------------------------------------------

**COMPLAINT**

-------------------------------------------------------------------------------

RIVKA WEISS
Plaintiff Appearing Pro Se
1689 48th Street
Brooklyn NY 11219
(917) 618 4481