UNITED STATES DISTRICT COURT                    C/M
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                          :
RIVKA STEIN,                                              :        **MEMORANDUM**
                                                          :        **DECISION AND ORDER**
                               Plaintiff,                 :
                                                          :        13 Civ. 6795 (BMC)
                 - against -                              :
                                                          :
WORLD-WIDE PLUMBING SUPPLY INC.,                          :
MOSHE WEISS (a/k/a MOSES WEISS, a/k/a                     :
MOSHE WEISZ), YOEL WEISS (a/k/a JOEL                      :
WEISS, a/k/a DAVID WEISS, a/k/a DAVID                     :
STERN, a/k/a JOE WEISS, a/k/a WIZTEL USA,                 :
INC.), PEARL WEISS, CHAIM LEFKOWITZ,                      :
SURI LEFKOWITZ (a/k/a SARAH WEISS                         :
LEFKOWITZ), GEDALIA DANIEL KATZ                           :
(a/k/a DANIEL KATZ), BARUCH WEISS,                        :
SIRKI EHRMAN (a/k/a SIRKY EHRMAN,                         :
a/k/a SIRKA WEISS EHRMAN), RUCHIE                         :
WEISS (a/k/a RACHEL GOLDA WEISS),                         :
ABRAHAM BERGER (a/k/a ABE BERGER),                        :
BURTOLUCCI'S RISTORANTE, LLC,                             :
BERTOLUCCI'S CATERING CORP., AND                          :
JOHN DOES NOS. 1-5,                                       :
                                                          :
                               Defendants.                :
---------------------------------------------------------- X

**COGAN**, District Judge.

      This action, in which plaintiff brings civil RICO claims predicated on violations of

various human trafficking prohibitions contained in Chapter 77 of Title 18 of the United States

Code, is before me on motions to dismiss by four of the named defendants.  Plaintiff has filed an

Amended Complaint against 13 individuals and entities, as well as a number of John Does.  The

bulk of the Amended Complaint centers on the conduct of Yoel Weiss, plaintiff's husband.

Yoel's uncle and aunt, defendants Chaim and Suri Lefkowitz, along with World-Wide Plumbing

Supply Inc., have moved to dismiss the Amended Complaint against them.  Also before me is

defendant Gedalia Daniel Katz's (with the others, the "moving defendants") motion to dismiss. The motion is granted in part and denied in part.

## BACKGROUND

The facts below are taken from the Amended Complaint and deemed true for the purpose of deciding the pending motions.

In July 2008, plaintiff married Yoel Weiss in a religious (but not civil) ceremony, which triggered the series of events that gives rise to the Amended Complaint. Yoel Weiss is the nephew of moving defendants Chaim and Suri Lefkowitz, and Chaim and Suri are the principal owners of moving defendant World-Wide. Plaintiff alleges that immediately after her marriage to Yoel, he and some of his family members, including Suri, engaged in an "unrestrained campaign of abuse and harassment" against her, including "repeated rapes, beatings, torture, threats of the same, forced servitude, peonage, and – subsequent to that time – threats against Plaintiff's children." According to plaintiff, this was part of a "scheme to control Plaintiff and prevent her from escaping."

Most of the alleged abuse came from plaintiff's husband, Yoel Weiss. Yoel repeatedly beat and raped plaintiff. Additionally, Yoel would confine her to a small area of the home they shared with Yoel's parents, Moshe and Pearl Weiss, and his siblings, Ruchie Weiss and Sirky Ehrman. For an eight-month period in 2011, Yoel granted plaintiff permission to leave the house on only three occasions. Chaim and Suri are also alleged to have participated in a conspiracy to falsely imprison plaintiff. In particular, Suri would "check on" plaintiff at her home and constantly remind her that plaintiff's home was wired with audio and video surveillance, and that plaintiff should not attempt to leave the premises.

From about July 2007 to December 2010, plaintiff resided with Yoel Weiss at 1621 East 27th Street in Brooklyn, New York. According to plaintiff, this house (the "Residence/Warehouse") was also used as a commercial warehouse for the distribution and resale of stolen goods, *i.e.*, an illegal fencing operation. The Amended Complaint details the illegal fencing operation, which relabeled and repackaged stolen merchandise that had been procured by "members of underworld crime organizations, including the so-called Polish Mafia," from hijacked commercial trailers. Defendants would then ship the repackaged merchandise to "locations both inside and outside the State of New York." As principal owners of the illegal fencing operation, Chaim, Suri and Yoel would inspect the stolen merchandise and meet with the sellers and potential buyers of the goods. Cash and proceeds of the illegal fencing operation were laundered through defendants World-Wide, Chaim, Suri, Katz, Sirky Ehrman, Moshe Weiss, Pearl Weiss, Ruchie Weiss and John Does Nos. 3-5. Katz also participated in the illegal fencing operation by maintaining personal and corporate banking accounts for the financial transactions of the organization, as well as by enabling Yoel to make illicit purchases using credit cards held in Katz's name.

Chaim and Suri, along with others, forced plaintiff to work 16 hours a day monitoring the workers employed by the illegal fencing operation, but refused to pay her for her labor. In addition, from about March 2009 to June 2009, Yoel forced plaintiff to work at his restaurant, Pizza Express, which was allegedly "operated, at least in part, to assist in the laundering of the proceeds from the illicit fencing operation." He never paid plaintiff for her work, and when plaintiff asked for payment, he threatened her with bodily harm. Similarly, Yoel forced plaintiff

to work without compensation at another restaurant, Burtolucci's Ristorante, LLC, which Yoel

had purchased using proceeds from the fencing operation.[1]

## DISCUSSION

### I

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.'"  Hogan v. Fischer, 738

F.3d 509, 514 (2d Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937,

1949 (2009)).  "A claim is plausible 'when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

Id. (same).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, the court must "accept all factual allegations [in the complaint] as true and draw all

reasonable inferences in favor of plaintiff."  Meyer v. Jinkosolar Holdings Co., Ltd., 761 F.3d

245, 249 (2d Cir. 2014) (internal quotation omitted); see also JTE Enterprises, Inc. v. Cuomo,

No. 13 Civ. 1425, 2014 WL 639423, at *4 (E.D.N.Y. Feb. 15, 2014).

### II

For plaintiff to properly state a claim under 18 U.S.C. § 1962(c), she must allege "'(1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  4 K & D Corp. v.

Concierge Auctions, LLC, No. 13 Civ. 2527, 2014 WL 904451, at *3 (S.D.N.Y. Mar. 10, 2014)

(quoting DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001)).  As to the second requirement, a

RICO enterprise is defined as "'a group of persons associated together for a common purpose of

engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing

---

[1] The Amended Complaint names Burtolucci's Ristorante, LLC and Bertolucci's Catering Corp. as defendants, and refers to those entities using both spellings interchangeably.  I will refer to them collectively as the "Bertolucci's defendants."

organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004) (quoting United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 2529 (1981)).  In particular, for an association of individuals to constitute as an enterprise, "the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes."  Id. at 174 (internal quotation marks omitted); see also United States Fire Ins. Co. v. United Limousine Serv., Inc., 303 F. Supp. 2d 432, 447 (S.D.N.Y. 2004).  The enterprise's purpose or purposes must be common to all of its members.  See Crabhouse of Douglaston Inc. v. Newsday Inc., 801 F. Supp. 2d 64, 77 (E.D.N.Y. 2011) (citing Satinwood, 385 F.3d at 173).

The Amended Complaint alleges that aside from Chaim, Suri and World-Wide, the RICO enterprise consisted of Yoel Weiss, Moshe Weiss, Pearl Weiss, Baruch Weiss, Katz, Sirki Ehrman, Ruchie Weiss, Abraham Berger, the Bertolucci's defendants, John Does Nos. 1-5, and Wiztel USA, Inc.,[2] and that they had a "common purpose of engaging in illegitimate purposes, including obtaining forced labor from and control over Plaintiff."  However, putting aside the conclusory nature of this allegation, the specific factual allegations in the Amended Complaint show that the enterprise did not share in the common purpose of obtaining forced labor from or otherwise exploiting plaintiff.  For example, defendant Katz is alleged to have allowed Yoel Weiss to make illicit purchases using credit cards held in his name and to have maintained bank accounts for the illicit fencing operation.  There is no suggestion that Katz shared in the common purpose of obtaining forced labor from plaintiff; at most, he shared in a common purpose to profit through the illicit fencing operation.  Similarly, defendant Berger is only alleged to have worked with Yoel Weiss with respect to the purchasing and selling of stolen jewelry for the illicit

---

[2] Witzel has been voluntarily dismissed from this action.

fencing operation; there are no facts supporting the inference that Berger shared in the common purpose of obtaining forced labor from plaintiff.  The same is true for John Does No. 1-5.  Thus, because an association of individuals "'must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes'" in order to constitute an enterprise, <u>Newsday</u>, 801 F. Supp. 2d at 77 (quoting <u>Satinwood</u>, 385 F.3d at 174), the common purpose of the individuals and entities comprising the alleged RICO enterprise in the present case was not to obtain forced labor from plaintiff.  Rather, according to the Amended Complaint, the individuals and entities listed by plaintiff associated in order to engage in and profit from an illegal fencing operation.

Properly defining the RICO enterprise is important to determining whether plaintiff has adequately alleged a RICO injury.  The statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [the criminal RICO statute] may sue . . . and shall recover threefold the damages he sustains . . . ."  18 U.S.C. § 1964(c); <u>see also</u> <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639, 647, 128 S. Ct. 2131, 2137 (2008). Therefore, for plaintiff to survive a Rule 12(b)(6) motion, she must at a minimum plead "'(1) the defendant[s'] violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.'"  <u>Lerner v. Fleet Bank, N.A.</u>, 318 F.3d 113, 120 (2d Cir. 2003) (quoting <u>Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.</u>, 271 F.3d 374, 380 (2d Cir. 2001)).  It is not enough for a plaintiff to plead that defendants participated in racketeering activity and that she was injured; she must also allege that her injury was "derive[d] from the racketeering activities of defendants, functioning as a continuing unit and for a common purpose in conducting or participating in the operation or management of the affairs of the relevant 'enterprise.'"  <u>Gross v. Waywell</u>, 628 F. Supp. 2d 475, 498 (S.D.N.Y.

6

2009); see also Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1100 (2d Cir. 1988) (citation omitted).

In Tsipouras v. W&M Properties, Inc., 9 F. Supp. 2d 365 (S.D.N.Y. 1998), an employee sued his former employer, alleging that the employer had violated RICO and that its illegal actions had prevented him from receiving his promised bonus. The court dismissed Tsipouras' claims, noting that "it is firmly established that an employee who is not the target of defendants' alleged racketeering activity lacks standing to bring a civil RICO claim against his former employer." Id. at 367. The court stated that the employer's alleged illegal actions, which included tax evasion and fraud, were directed at "third-party banks, limited partners and the government," and not the plaintiff. Id. Additionally, the court found that even if Tsipouras had standing, there was no causation; "[w]here as here, a plaintiff alleges that he has been harmed by the defendant's acts towards another, the claim is too remote and plaintiff cannot recover." Id.

The Amended Complaint here suffers from the same problem that Tsipouras had. It is replete with facts about the illegal fencing operation, the running of which, as noted above, was the core purpose of the alleged RICO enterprise. The intended victims of the alleged RICO enterprise were the companies that had their goods stolen and the owners of the stolen credit cards, not plaintiff. As a result, plaintiff lacks standing to sue participants in the alleged enterprise under civil RICO. Additionally, plaintiff's injury – lost and confiscated wages, as well as lost employment opportunities – could not have been caused by the RICO enterprise, the illegal actions of which were directed towards other parties.[3] Indeed, if defendants had managed a perfectly legitimate distribution business, plaintiff's alleged exploitation would not have been any different.

---

[3] The Amended Complaint also alleges that plaintiff suffered emotional harm from the RICO enterprise's actions; however, emotional damages may not constitute an injury for purposes of recovery under civil RICO. See Gross, 628 F. Supp. 2d at 488 (citing Genty v. Resolution Trust Corp., 937 F.2d 899 (3d Cir. 1991)).

Even if the common purpose of the RICO enterprise was to obtain "[p]laintiff's involuntary servitude for the benefit of [its] illicit and criminal activities," the RICO enterprise would only be comprised of those individuals who shared a common purpose to obtain forced labor from plaintiff. Satinwood, 385 F.3d at 174. That is, individuals such as Katz, Berger and John Does Nos. 1-5 could not be a part of the RICO enterprise, because they are not alleged to have shared in the common purpose of obtaining forced labor from plaintiff. This results in a RICO enterprise that is coterminous with the pattern of racketeering activity in which it engages. This in turn means that it is not actionable. See id. at 173 ("The enterprise must be separate from the pattern of racketeering activity"); see also Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F. Supp. 2d 243, 274 (E.D.N.Y. 2012); United States Fire Ins. Co., 303 F. Supp. 2d at 446-47. In other words, any association of individuals existing only for the purpose of obtaining forced labor from plaintiff is not "a 'discrete economic association existing separately from the racketeering activity.'" Satinwood, 385 F.3d at 173 (quoting United States v. Anderson, 626 F.2d 1358, 1372 (8th Cir. 1980)); see also Wood v. Incorporated Vill. of Patchogue, 311 F. Supp. 2d 344, 357 (E.D.N.Y. 2004) (noting that "the enterprise must have some sort of existence independent of the commission of the predicate acts") (internal quotation marks and citation omitted). Therefore, because plaintiff has not adequately alleged an enterprise that has a purpose other than to obtain forced labor from plaintiff, plaintiff's first cause of action for civil RICO is dismissed.[4]

---

[4] On a motion to dismiss for failure to state a claim, where there are issues concerning a non-moving defendant that are "substantially the same as those concerning" the moving defendant(s), and where the plaintiff has been given a full opportunity to make out her claim, *sua sponte* dismissal of a claim under Rule 12(b)(6) is appropriate. See Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.6 (2d Cir. 1990).

**III**

Plaintiff must adequately allege a substantive RICO violation in order to sufficiently plead a RICO conspiracy claim under 18 U.S.C. § 1962(d).  See Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 244 (2d Cir. 1999); Ferri v. Berkowitz, 678 F. Supp. 2d 66, 76 (E.D.N.Y. 2009); Dempsey v. Sanders, 132 F. Supp. 2d 222, 226 (S.D.N.Y. 2001). Because I have found that plaintiff has failed to properly allege a RICO claim for the reasons stated above, plaintiff's second cause of action for RICO conspiracy also is dismissed.  See Ferri, 678 F. Supp. 2d at 76.

**IV**

Under 18 U.S.C. § 1595, an individual who is the victim of peonage, enticement into slavery, or forced labor "may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in [peonage, enticement into slavery, or forced labor])."  18 U.S.C. § 1595(a).  "Peonage" has been defined as "'a status or condition of compulsory service, based upon the indebtedness of the peon to the master. . . . The peon can release himself therefrom . . . by the payment of the debt, but otherwise, the service is enforced." Ellerbe v. Howard, No. Civ. 86-957E, 1989 WL 64156, at *3 (W.D.N.Y. June 13, 1989) (quoting Clyatt v. United States, 197 U.S. 207, 215, 25 S. Ct. 429, 430 (1905)); see also Sulastri v. Halsey, No. 12 Civ. 3538, 2014 WL 4904718, at *11 (E.D.N.Y. Aug. 21, 2014) (noting that peonage "is tied to the discharge of an indebtedness") (internal quotation marks and citation omitted).  The facts alleged in support of plaintiff's peonage claim focus on the conduct of defendants Yoel Weiss, Moshe Weiss, Pearl Weiss, and Ruchie Weiss, who allegedly told plaintiff that she owed a debt to Yoel Weiss because he had given up his previous residence for

plaintiff, and that she was responsible for reimbursing him for the increased rent he was then forced to pay. As a result, defendant Yoel Weiss allegedly confiscated plaintiff's earnings from her part-time employment as an aide at an elementary school.

These allegations may be sufficient to state a claim against Yoel, Moshe, Pearl and Ruchie as perpetrators, but there is no claim that Chaim and Suri were themselves the perpetrators of peonage against plaintiff. Thus, the peonage claim against them survives only if they fall within the parenthetical in § 1595(a), *i.e.*, if it is alleged that they benefited from peonage against her, and that they did so knowingly.

The claim fails in both respects. First, there is no allegation that Chaim or Suri benefited from the peonage scheme; according to the Amended Complaint, Yoel Weiss was the one who collected plaintiff's earnings, and it is not alleged that he shared these monies with Chaim or Suri. Second, even if Chaim or Suri had benefited from plaintiff's status as a peon, there are nothing but conclusory allegations that suggest they knew of the scheme to confiscate plaintiff's earnings or that they even knew plaintiff was being told that she owed Yoel Weiss a debt. Without factual allegations showing Chaim and Suri's knowledge of the peonage scheme, plaintiff has not adequately alleged a claim against them under § 1595(a). Accordingly, plaintiff's third cause of action for peonage is dismissed as against Chaim and Suri.

There also is no allegation that any of Yoel's conduct that may have given rise to a peonage claim had anything to do with his operation of Bertolucci's, *i.e.*, that he was acting as its agent in convincing plaintiff that she owed him a debt and confiscating her salary. Therefore, the third cause of action is dismissed as against the Bertolucci's defendants as well.

Similar problems plague plaintiff's fourth cause of action, enticement into slavery, against Chaim and Suri. Section 1583(a) of Title 18 makes it illegal to "entice[], persuade[], or

10

induce[] any other person to go . . . to any other place with the intent that he or she may be made or held as a slave . . . ."  According to the Amended Complaint, plaintiff alleges that she was "induced to enter into a religious union with defendant Yoel Weiss," which was really part of "a scheme to obtain forced labor from and control over Plaintiff for the benefit of Defendants' various criminal and illicit activities . . . ."  Upon a plain reading of § 1583(a), a religious union is not a "place" for purposes of this statute, which was enacted by Congress to combat human trafficking.

Plaintiff's only factual allegations that would even arguably give rise to liability under this provision involve Yoel Weiss and Baruch Weiss, who allegedly induced her to travel to Canada with the intent that she would be held against her will and forced to work without compensation there.  Plaintiff alleges no facts supporting an inference that the moving defendants had knowledge of, or benefited from, this conduct.  Thus, plaintiff's fourth cause of action for enticement into slavery must be dismissed as against Chaim and Suri.  <u>See</u> 18 U.S.C. § 1595(a).  For the same reasons, plaintiff's fourth cause of action is dismissed *sua sponte* as against defendants Moshe Weiss, Pearl Weiss, and Ruchie Weiss.  Moreover, for the same reasons that plaintiff's third cause of action must be dismissed as against the Bertolucci's defendants, this claim against them also is dismissed.

On the other hand, plaintiff has adequately alleged a forced labor claim against Chaim and Suri.  Section 1589 of Title 18 makes it illegal to knowingly "obtain[] the labor or services of a person . . . by means of force, threats of force, physical restraint, or threats of physical restraint" and/or "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a); <u>see also</u> <u>Aguirre v. Best</u>

Care Agency, Inc., 961 F. Supp. 2d 427, 443 (E.D.N.Y. 2013).  The Amended Complaint alleges

that Chaim and Suri, along with Yoel Weiss and other defendants, forced her to work as a

monitor over workers at the Residence/Warehouse, that she was not compensated for this labor

and that they benefited from her labor.  These statements are enough for plaintiff's fifth cause of

action for forced labor to survive the instant motion.  See Iqbal, 556 U.S. at 678, 129 S. Ct. at

1949.

<strong>V</strong>

Chaim, Suri and World-Wide do not provide specific reasons why plaintiff's remaining

causes of action against them should be dismissed.  Their reply brief in support of their motion to

dismiss merely states that "[f]or similar reasons the remaining federal causes of action (including

the second, sixth, seventh, and eighth) should be dismissed, leaving only state causes of action

which should be dismissed because of a lack of pendent jurisdiction."

Plaintiff's sixth, seventh and eighth causes of action for benefitting from peonage, slavery

and trafficking in persons under 18 U.S.C. § 1593A, attempted violation of prohibitions on

peonage, enticement into slavery and forced labor under 18 U.S.C. § 1594(a), and conspiracy to

violate prohibitions on peonage, enticement into slavery and forced labor under 18 U.S.C. §

1594(b), are derived from her third, fourth and fifth causes of action brought via § 1595(a).

Section 1593A makes it a crime for someone to "knowingly benefit[], financially or by

receiving anything of value, from participation in a venture which has engaged in any act in

violation of section 1581(a) . . . or 1595(a), knowing or in reckless disregard of the fact that the

venture has engaged in such violation."  Section 1581 is the prohibition on peonage.  Section

1595(a) is, of course, the civil liability provision through which most of the allegations in this

case are brought; it allows "[a]n individual who is a victim of a violation [to] bring a civil action

12

against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . . ."  <u>See</u> 18 U.S.C. §§ 1593A and 1595(a).  Although §§ 1593A and 1595(a) cross-reference each other, I do not read 1593A as creating a distinct civil cause of action.  That provision makes it a crime to knowingly benefit from violations of two other provisions, but § 1595(a) already creates civil liability for the same thing.  Plaintiff's sixth cause of action is therefore dismissed as to all defendants.

As for plaintiff's seventh cause of action, 18 U.S.C. § 1594(a) provides that "[w]hoever attempts to violate [the prohibitions on peonage, enticement into slavery, and forced labor, among other offenses] shall be punishable in the same manner as a completed violation of that [crime]."  As discussed above, plaintiff has failed to state a claim for peonage against Chaim or Suri or against the Bertolucci's defendants, and has failed to state a claim for enticement into slavery against Chaim or Suri, Moshe, Pearl, or Ruchie Weiss, or the Bertollucci's defendants. A claim of attempt requires plaintiff to allege that defendants had the intent to commit the underlying crime.  <u>See United States v. Farhane</u>, 634 F.3d 127, 145 (2d Cir. 2011).  There is no allegation in this case of any unsuccessful attempt to commit any of the alleged violations.  Thus, for all the reasons discussed herein, plaintiff has failed to state a claim for attempted violations of peonage and enticement into slavery against the same defendants.

On the other hand, plaintiff has sufficiently alleged attempted violation of the prohibition against forced labor.  For example, plaintiff alleged that she was forced by Chaim and Suri to monitor workers at the Residence/Warehouse.  From this, it is plausible that Chaim and Suri had the intent to force plaintiff to work for them and committed an overt act in furtherance of that intent.  <u>See United States v. Resendiz-Ponce</u>, 549 U.S. 102, 106-07 (2007).  Thus, plaintiff's

13

seventh claim, for attempt, to the extent that it concerns a violation of the prohibition against
forced labor, survives this motion to dismiss.

Plaintiff's eighth cause of action arises under 18 U.S.C. § 1594(b), which makes it a
crime to "conspire[] with another to violate [the prohibitions on peonage, enticement into slavery
and forced labor, among other offenses]."  For there to have been a conspiracy, there must have
been an agreement to violate the prohibitions on peonage, enticement into slavery and forced
labor.  See United States v. Svoboda, 347 F.3d 471, 476-77 (2d Cir. 2003).  Although plaintiff
does not have to plead that there was an explicit agreement to commit these violations against
her, she needs to allege facts that plausibly show Chaim and Suri "'and other alleged
coconspirators entered into a joint enterprise with consciousness of its general nature and
extent.'" Id. at 477 (quoting United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1191
(2d Cir. 1989)).  As noted above, plaintiff has not sufficiently pled that Chaim and Suri – or any
other defendant not directly involved – had knowledge of any alleged schemes to violate
prohibitions on peonage and enticement into slavery.  Without knowledge, it cannot be said that
plaintiff has adequately stated a conspiracy claim with respect to these two crimes.  See United
States v. Reyes, 302 F.3d 48, 53 (2d Cir. 2002).

As to a conspiracy to violate the prohibitions on forced labor, plaintiff has failed to plead
the existence of an agreement.  An agreement consists of a "meeting of the minds," in other
words, "[t]wo people have to engage in the 'act of agreeing'" for there to be an agreement for
conspiracy purposes.  United States v. Ulbricht, No. 14 Cr. 68, 2014 WL 3362059, at *5
(S.D.N.Y. July 9, 2014) (quoting United States v. Rosenblatt, 554 F.2d 36, 38 (2d Cir. 1977)).  In
the Amended Complaint, plaintiff merely states that she "was forced by defendants Chaim and
Suri Lefkowitz, and defendant Yoel Weiss, acting in concert with the other Defendants, to act –

14

by her presence – as a monitor over the workers employed at the Residence/Warehouse."

Although such a statement alleges that Chaim and Suri and others possibly participated in

violation of the forced labor prohibition, it does not imply that there was some act of agreement

between any of them.  Accordingly, plaintiff's conspiracy claim fails.

## VI

There are left a number of state causes of action, some of which are alleged against

defendant Yoel Weiss only.  Plaintiff's eleventh and twelfth causes of action for violations of

New York State and New York City labor laws name Chaim and Suri as defendants, and

plaintiff's fourteenth cause of action for declaratory judgment is brought against all named

defendants.  As to the eleventh and twelfth causes of action against Chaim and Suri, defendants

argue only that these claims should be dismissed for lack of jurisdiction.  That might be correct

had I dismissed all federal claims against Chaim and Suri, but I have not; the surviving federal

claims create supplemental jurisdiction over the state law claims.  See 28 U.S.C. § 1367(a).

## VII

Remaining is plaintiff's fourteenth cause of action for a declaratory judgment in which

she seeks "injunctive relief enjoining defendant Yoel Weiss from taking out and/or maintaining

any life insurance policies naming Plaintiff as the insured, and ordering defendant Yoel Weiss to

cancel any such existing policies and/or surrender any such existing policies to Plaintiff so that

she may take action to change the named beneficiaries."  The Amended Complaint states that

Yoel Weiss is the named beneficiary on the policies and that he owns the policies through

"someone associated with his family (John Doe No. 1) whom he controls."

Assuming that plaintiff's fourteenth cause of action presents "a case of actual

controversy," see 28 U.S.C. § 2201(a), I cannot see how this cause of action could be brought

against anyone but Yoel Weiss and John Doe No. 1.  By plaintiff's own account, Yoel Weiss is

the owner and beneficiary of the policies, so any relief that plaintiff seeks could only be satisfied

by a judgment against Yoel Weiss and John Doe No. 1, the owner of the policies on paper.

Although John Doe No. 1 is someone who is associated with Yoel Weiss and his family, this

does not give plaintiff the liberty to bring this cause of action against everyone who is associated

with Yoel Weiss and his family.[5]  See Iqbal, 556 U.S. at 678 (noting that the plausibility

standard under Rule 8 of the Federal Rules of Civil Procedure require "more than a sheer

possibility that a defendant has acted unlawfully").  And although Yoel Weiss works with the

moving defendants, plaintiff does not allege facts suggesting that Yoel Weiss "controls" them.

Accordingly, plaintiff's fourteenth cause of action is dismissed against the moving defendants

and all other defendants, *sua sponte*, with the exception of Yoel Weiss.

## CONCLUSION

To summarize, the motions to dismiss are granted to the following extent:

(a) Counts 1, 2, 6 and 8 are dismissed against all defendants;

(b) All claims against Chaim and Suri are dismissed except the fifth (forced labor),

seventh (attempt), and eleventh and twelfth (labor law) causes of action;

(c) All claims against World-Wide, Katz, Ehrman and Berger are dismissed;

(d) Plaintiff's third claim is dismissed as against the Bertolucci's defendants;

(e) Plaintiff's fourth claim is dismissed as against Moshe, Pearl, Ruchie Weiss and the

Bertolucci's defendants;

---

[5] Additionally, according to the Amended Complaint, plaintiff should have some idea of who John Doe No. 1 is, given that she was forced to consent to the applications for the insurance policies.

(f) Plaintiff's seventh claim is dismissed in part, to the extent that it alleges attempted violations of 18 U.S.C. §§ 1581 or 1583 against Chaim and Suri Lefkowitz or the Bertolucci's defendants or alleges attempted violations of § 1583 by Moshe, Pearl or Ruchie Weiss; and

(g) Plaintiff's fourteenth claim is dismissed as against all defendants except Yoel Weiss.

**SO ORDERED.**

_____

U.S.D.J.

Dated: Brooklyn, New York
December 2, 2014